**Willard GREEN, Petitioner,**

v.

**Raymond ROBERTS, et al., Respondents.**

**No. 91–3125–S.**

United States District Court,
D. Kansas.

Sept. 11, 1992.

Willard Green, pro se.

Melanie S. Jack, Kan. Bureau of Investigation, Topeka, Kan., for respondents.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter comes before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner an inmate at the El Dorado Correctional Facility, El Dorado, Kansas was convicted on September 1, 1987, of two counts of first degree murder, one count of aggravated assault, and one count of possession of a firearm following a prior felony conviction. Petitioner was sentenced to life on each conviction for .murder, to nine (9) years on the aggravated assault conviction, and to five (5) years on the possession of a firearm conviction. The murder convictions were run concurrent while the conviction for the aggravated assault was run consecutive to the murder convictions and the possession of a firearm conviction was run consecutive to the aggravated assault conviction.

In this action, petitioner challenges his conviction and asserts: (1) his constitutionally guaranteed right to remain silent under the Fifth Amendment was violated when the prosecutor, during closing argument, impermissibly commented on petitioner's post-arrest, post-*Miranda* silence;

and (2) the prosecutor's comments and questions about, and to, a defense witness concerning that witness's failure on a polygraph examination violated petitioner's right to a fair trial.

Having reviewed the record in this matter, the court makes the following finds and order.

*Factual Background*

Petitioner and Zeola Wilson lived together for approximately one year prior to Wilson's death. Trouble apparently arose and Wilson, who was eight months pregnant with petitioner's child, moved herself and her five children out of petitioner's home.

On April 8, 1987, the day of the shootings, Wilson and her family contacted law enforcement officers several times complaining that petitioner was harassing Wilson and other members of the family. Petitioner had spent over five hours that day walking back and forth and yelling in front of Mae Thomas's house. Thomas was Wilson's sister and Wilson and her children had been living at Thomas's since leaving petitioner's home. Bettie Greasham and Charles Davis had driven to Thomas's house to drive Wilson and two of her children to another location. While Wilson was sitting in the passenger seat of Greasham's car, petitioner approached her and shot her in the head, the chest and the arm. Petitioner then fired two shots at the door of the house. Davis was the first person to reach the car after the shooting.

Wilson was pronounced dead and medical personnel immediately performed a cesarean section in an attempt to save the life of the male fetus. The effort was unsuccessful and medical authorities deemed the birth a "stillbirth." Petitioner was arrested the following day and charged with one count of murder for the death of Wilson and one count of murder for the death of the fetus. A gun, which proved to be the murder weapon and which belonged to the petitioner's father, was found near where petitioner was arrested. Following the arrest, it was discovered that petitioner had sustained a gunshot wound to the chest. The source of that wound was never determined.

Petitioner appealed his convictions to the Kansas Supreme Court. On October 27, 1989, the court reversed the conviction based on the murder of the fetus and affirmed each of the other three convictions. 245 Kan. 398, 781 P.2d 678.

Petitioner filed this action on April 23, 1991.

*Discussion*

■ Petitioner asserts as his first claim that the prosecutor's comment during closing argument was an impermissible statement on his post-arrest silence. The following exchange occurred.

MISS FITCH: The defendant had every opportunity to tell the police, when asked, that he was injured.

MR. TOUSLEY: Your Honor—

MISS FITCH: And he refused.

MR. TOUSLEY: I am going to object to that comment on the record as to him not telling the police. That goes to his right to remain silent.

THE COURT: You had better rephrase that, ma'am, or you are creating an inference that would not be permissible in any court in this land.

MISS FITCH: The defendant was asked repeatedly by the police when he was injured, and he told them, he refused treatment at the hospital, refused examination, fought Dr. McMaster—there is no evidence to support who shot him.

Impermissible comment on a defendant's post-arrest silence is of substantial constitutional dimension. Once a suspect has been apprised of his rights in accordance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he is assured that his silence will not be held against him.

The test, in this circuit, for determining whether there has been an impermissible comment on a defendant's right to remain silent at the time of, or subsequent to, his arrest is "whether the language is manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent." *U.S. v. Mora,* 845 F.2d 233, 235 (10th Cir.) *cert.*

*denied Mora v. United States*, 488 U.S. 995, 109 S.Ct. 562, 102 L.Ed.2d 587 (1988). Furthermore, "the court must look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact on the jury." *Id.* If some other equally plausible explanation exists for the prosecutor's comments, manifest intent will not be found. *Id.*

A review of the record reveals that petitioner relied on a theory of self-defense with the implication that Wilson had shot him first. The prosecutor's statement during closing argument appears to have been an attempt to draw to the attention of the jury the fact that no witnesses testified that they saw Wilson shoot petitioner while several witnesses testified to seeing petitioner brandishing a gun and firing into the car where Wilson sat.

Additionally, the prosecutor's statement on petitioner's failure to say he was injured or how he was injured does not necessarily lead to the conclusion that the jury would automatically associate that statement with petitioner's guilt or innocence. Rather the statement could reasonably be construed to be fair comment to impeach petitioner's evidence and witnesses concerning the theory of self-defense. Within the context of the closing statement, the court concludes that the comment was not manifestly intended, nor was of such character that the jury would naturally and necessarily take it, to be a comment on the defendant's right to remain silent.

■ Even if this court had concluded that the comment was violative of petitioner's right to remain silent, the court must then determine whether such comment is harmless error. Because of the constitutional magnitude of the issue, the court must be convinced, after assessing the record as a whole, that the error is harmless beyond a reasonable doubt. See *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The factors a court should consider when determining whether the comment is harmless were stated in *United States v. Massey*, 687 F.2d 1348, 1353 (10th Cir.1982).

These are: (1) the use to which the prosecutor puts the post-arrest silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence of guilt; (4) the intensity and frequency of the reference; and (5) the availability to the trial judge of an opportunity to grant a motion for a mistrial or to give curative instructions. *Id.*

First, while it may reasonably be argued that the prosecutor's comment during closing statement could be construed as a comment on petitioner's post-arrest silence, it is equally plausible that it was fair comment on petitioner's witnesses and evidence. Second, the prosecutor clearly made the comment on her own. Third, the quantum of other evidence of guilt was overwhelming. Several eyewitnesses saw petitioner with the gun, saw him fire into the car, saw him fire into the house and saw him run from the scene. The witnesses positively identified petitioner both in photo arrays and in court. Fourth, the prosecutor's reference to petitioner's failure to tell police about his injury was made one time in closing argument and the comment was rephrased after a warning from the court. Finally, the trial judge acknowledged defense counsel's objection and instructed the prosecutor to correct the error.

Based on a review of the record as a whole, particularly the overwhelming evidence against the petitioner, even using the harmless error analysis, the court would conclude that the error was harmless beyond a reasonable doubt.

■ Petitioner's second assignment of error is that the trial court erroneously admitted evidence of the results of a polygraph examination of a defense witness. Clarence Burton was called as a witness for the defense. The gist of Burton's testimony was that he had overheard Charles Davis tell someone that he, Davis, had taken a gun out of Wilson's hand after the shooting occurred. Davis said he gave the gun to Wilson's sister.

Burton testified that he told police this information when he went to retake a portion of a polygraph examination at the Police Academy. The examination was given

because Burton aspired to be a reserve police officer and was not connected to the shooting of Wilson by Green. Burton had apparently failed part of the test when he first was examined and was being retested at a later date. The polygraph examiner testified that at the second testing Burton stated that he failed the first time because he was worried about the Davis conversation he had overheard. During cross-examination, the prosecutor was able to show that Burton did not hear the Davis conversation until after the first polygraph examination. Consequently, Burton's testimony was impeached.

Petitioner claims that the prosecutor sought to bring in Burton's failure of the first test to impeach his credibility and that such evidence is inadmissible.

 Under Kansas law, polygraph evidence will not be admitted absent stipulation by both parties. *State v. Green,* 245 Kan. 398, 781 P.2d 678, 685 (1989). State court rulings on admissibility of evidence are not scrutinized unless the trial is rendered so fundamentally unfair as to constitute a denial of federal constitutional rights. *Tucker v. Makowski,* 883 F.2d 877, 881 (10th Cir.1989).

Here, the results of Burton's polygraph were not the issue. The prosecutor was clearly unartful in her attempts to impeach Burton by showing he gave as a reason for his failure of part of the first examination an event that occurred after he took that examination. The trial court on several occasions gave verbal curative instructions to the jury stating that the results of the tests carried no weight and should not be considered. In addition, the court's final instructions again advised the jury that the results of the polygraph were not admissible evidence.

The court concludes the evidence did not render the trial so fundamentally unfair that petitioner's constitutional rights were denied.

IT IS THEREFORE BY THE COURT ORDERED that the petition for writ of habeas corpus is dismissed and all relief denied.