**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edier TENORIO, Defendant–Appellant.**

**No. 93–4666.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 29, 1995.

---

Christine Stebbins Dahl, Brenda G. Bryn, Asst. Federal Public Defenders, Thomas S. White, Federal Public Defender, Miami, FL, for Appellant.

Roberto Martinez, U.S. Atty, Linda Collins Hertz, Kathleen M. Salyer, Robert K. Senior, Asst. U.S. Attys., Miami, FL, for Appellee.

Before EDMONDSON and BARKETT, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

Edier Tenorio ("Tenorio") appeals his conviction claiming the district court erred in permitting the prosecutor to use post-*Miranda* [1] silence to suggest guilt and impeach his testimony. We reverse.

Tenorio was charged with importation and possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 952(a) and 841(a)(1). The three day trial commenced with the government presenting evidence that Tenorio arrived at Miami International Airport on an American Airlines flight from Panama. His manner and dress caught Inspector Richard Skirko's attention in the customs inspection area. Observing an expensive "piggyback" suitcase, Skirko stopped Tenorio at 6:05 p.m. because in his experience drugs were sometimes concealed in that particular style of Samsonite luggage. Skirko searched the suitcase at approximately 6:20 p.m. and immediately realized the sides were much thicker than normal. Within a few seconds of opening it, the inspector detected an odor of fiberglass resin, which he knew was frequently used to construct false compartments. His suspicions aroused, Skirko continued the search by punching a hole in the side of the suitcase with a screwdriver, which released a white powder. A field test at 6:25 p.m. confirmed the powder was heroin. Tenorio was advised of the test results and arrested.

Although the record does not reveal when Tenorio was actually read his *Miranda* rights, the prosecutor proffered that information to the district court. According to the proffer, after being advised of his rights, Tenorio said he "wanted to think about it," which he did for fifteen or twenty minutes.

---

1. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The record does show that Tenorio signed a statement at 6:35 p.m. declaring that he did not intend to waive his rights. It appears from the proffer, therefore, that Skirko read Tenorio his rights sometime around 6:20 or 6:25 p.m. The inspector remained on the scene until 6:40 p.m. verifying the amount of heroin seized.[2]

Inspector Skirko testified Tenorio did not appear to be shocked when he learned of the heroin. According to the inspector, after being arrested for importing narcotics, he "continued just to look unhappy, but not surprised." Tenorio testified he did not see Skirko probe the suitcase with a screwdriver, or test the powder. He said he wanted to explain to Skirko that the suitcase had been loaned to him, but kept quiet because he had been told that everything he said would be used against him.

D.E.A. Agent Victor Broughton took custody of Tenorio sometime after he refused to waive his rights and they left for the county jail at about 7:00 p.m. Broughton saw Tenorio twenty two hours later, at his initial court appearance, where Tenorio volunteered that "he didn't know anything about the narcotics; that some unidentified [cab driver] had approached him at the hotel and offered to loan him a suitcase because his suitcase was so worn, tattered." Broughton testified on direct examination that that was the first time he heard any explanation from Tenorio about the heroin.

Defense counsel moved for a mistrial asserting it was improper for the prosecutor to have elicited Broughton's testimony, which had indirectly touched on Tenorio's invocation of his right to remain silent. The government contended that evidence that Tenorio's voluntary statement was contradicted by his words or actions before the *Miranda* warnings was admissible. The government also argued it was permissible to contrast Tenorio's silence prior to receiving *Miranda* warnings with his statement to show that Tenorio had concocted a story while in jail to explain the heroin in his luggage. The court ruled the government could only elicit testimony concerning Tenorio's pre-*Miranda*

statements and the exculpatory statement made at his initial court appearance. Concluding that no improper testimony had yet been received, the court denied the motion for mistrial but admonished the prosecutor not to ask any questions implying that Tenorio had invoked his right to remain silent. The court also precluded any testimony of the twenty two hour delay between Tenorio's ride to the jail with Agent Broughton and his exculpatory statement.

The government presented its theory, in part, through the direct examination of Skirko and Broughton. In short, Tenorio's silence, as the government saw it, was proof of his guilt. The prosecutor developed this theory for the jury by urging them to consider that Tenorio offered Skirko no explanation during the inspection because he fabricated the story about the cab driver. She argued, "If it were true that [Tenorio was] an innocent courier, he would do what any normal person would do when the drugs were found, he would have [explained the drugs were not his]." The prosecutor concluded her summation to the jury on this point as follows:

> We would suggest to you ... that an innocent courier, when he was found in the airport to have drugs concealed in his luggage, would at that point say something if he had an explanation. He would be shocked, he would be horrified, and he would give the law enforcement agent an explanation of how [ ] he had gotten this suitcase, that he was not in fact the guilty party, that someone else must have put [the heroin] in. He didn't do that, although he was in Inspector Skirko's presence for half an hour.... And it is our suggestion to you that what happened is this. That Mr. Tenorio, overnight, in the jail simply thought [the story] up.... And so the next day, although no one in the court called upon him to give an explanation for the acts with which he was charged, he immediately volunteered [one] because he now had a story to give.

Defense counsel raised an objection to these comments, which the court again overruled

---

**2.** In total, the suitcase concealed approximately 1,548 grams of ninety three percent pure heroin, which had a wholesale value of $225,000 and a street value of $3 million.

because it understood the arguments were directed to Tenorio's pre-*Miranda* silence.

It is well established that after *Miranda* warnings have been given, the government cannot fairly use a defendant's silence against him at trial as evidence of guilt. *Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (silence cannot be used as affirmative proof of a fact in issue); *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (Fifth Amendment prohibits prosecutorial comment on defendant's silence); *United States v. Rivera*, 944 F.2d 1563 (11th Cir.1991) (silence cannot be used as evidence of guilt). Furthermore, *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) and its progeny, *see, e.g., Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) and *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), mandate that a defendant's exculpatory testimony cannot be impeached by his post-*Miranda* silence on the ground that he did not give an explanation for his conduct at the time of arrest.

In *Doyle*, the defendants took the stand and offered an exculpatory explanation for their participation in a drug transaction. On cross-examination, the prosecution impeached their testimony by asking why they had not explained their conduct upon arrest. The Supreme Court held that such cross-examination was fundamentally unfair, and thus violated the Due Process clause of the Fourteenth Amendment, for two reasons. First, a defendant's silence, being "insolubly ambiguous," has low probative value. 426 U.S. at 617, 96 S.Ct. at 2244. Second, *Miranda* warnings carry the implicit assurance "that silence will carry no penalty." *Id.* at 618–19, 96 S.Ct. at 2245.

When Tenorio objected to the government eliciting evidence of his silence, the prosecu-

tor made clear to the court the purpose of Agent Broughton's examination was to suggest that Tenorio had lied, and that he was guilty because if his story was true, he would not have waited twenty two hours before telling it. The prosecutor drove the point home to the jury in the closing argument quoted above. In addition, she highlighted Skirko's testimony for the jury that Tenorio was not shocked at being arrested. On this point she argued that he "volunteered no explanation as any reasonable innocent person would do when confronted with that situation."

█ The admission of Broughton's testimony and the prosecutor's comments during closing argument violated Tenorio's Fifth Amendment right to remain silent and right to due process.[3] The government erred by violating the implied assurance in the *Miranda* warnings that silence will carry no penalty. The district court erred in finding that the evidence and argument were directed only at pre-*Miranda* silence. Neither the testimony in question, nor the prosecutor's arguments drew any time distinctions for the jury. In fact, the prosecutor may well have confused the jury by referring to a half hour period that Tenorio spent with Inspector Skirko, which necessarily included a period of time after Tenorio refused to waive his right to remain silent. Furthermore, there were no curative or limiting instructions given to assist the jury. Thus, the jury could have impermissibly convicted solely on the basis of Tenorio's post-*Miranda* silence.[4]

█ When the use of a defendant's silence results in a constitutional violation, the conviction can stand only if the reviewing court is satisfied beyond a reasonable doubt that the error was harmless. *Matire v. Wainwright*, 811 F.2d 1430, 1436 (11th Cir. 1987). In *United States v. Meneses–Davila*, 580 F.2d 888 (5th Cir.1978),[5] the court out-

---

**3.** Broughton's testimony and the discussion in closing argument of the entire time Tenorio was with Officer Skirko involve Tenorio's post-Miranda silence, so constitutional error—which is not harmless—is present in this case. Tenorio is due a new trial.

**4.** That this may have been the case is supported by the fact that after several hours of deliberating

the jury deadlocked before returning a guilty verdict.

**5.** Decisions rendered prior to the close of business on September 30, 1981 by the former Fifth Circuit are binding precedent on this court. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981).

lined three categories into which prosecutorial comment on a defendant's silence may fall, one of which applies to the present case:

> When the prosecution uses defendant's post-arrest silence to impeach an exculpatory story offered by defendant at trial and the prosecution directly links the implausibility of the exculpatory story to the defendant's ostensibly inconsistent act of remaining silent, reversible error results even if the story is transparently frivolous.

*Id.* at 893 (citation omitted). Comments on post-arrest silence do not always fit neatly into a category and determinations of harmlessness must be made on a "case-by-case basis." *Id.* at 890. The reviewing court must examine the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt. *Id.*

The government's direct evidence in support of its theory needs no further discussion. In cross-examination, the government elicited directly from Tenorio that he did not offer his explanation to the agents because he was exercising his constitutional right of silence. The prosecutor's argument directly linked the implausibility of Tenorio's exculpatory story to his ostensibly inconsistent act of remaining silent.

Although the egregious and intentional use of silence to infer guilt is sufficient to warrant reversal, *see Matire,* 811 F.2d at 1433 & n. 2, several other factors influence our decision. Tenorio's silence was the touchstone of the government's case-in-chief, its cross-examination of the defendant, and its closing argument during this trial of short duration. The errors thus pervaded the trial, which amplified the importance of Tenorio's silence as a piece of evidence to be used to decide not only his credibility, but his guilt. *See Velarde v. Shulsen,* 757 F.2d 1093 (10th Cir. 1985) (per curiam) ("where the case comes down to a one-on-one situation, *i.e.,* the word of the defendant against the word of the key prosecution witness ... the importance of

the defendant's credibility becomes so significant that prosecutorial error [in] attacking that credibility cannot be harmless beyond a reasonable doubt"). Furthermore, the extremely prejudicial and improperly admitted evidence of Tenorio's silence could reasonably have been the basis for the guilty verdict. *See Stano v. Dugger,* 901 F.2d 898, 903 (11th Cir.1990) (en banc) (harmful error demonstrated in part by jury's inability to reach verdict).

Not being satisfied beyond a reasonable doubt that the errors were harmless, we REVERSE the conviction and REMAND for a new trial.[6]

EDMONDSON, Circuit Judge, concurring:

Although I concur in the result and in the court's opinion, the court's opinion steers clear of addressing a question that is properly before us and, I think, required to decide the case fully. Evidence of Tenorio's post-*Miranda* silence was introduced in the prosecution's case-in-chief. This use is constitutional error. Thus, the important question is whether the error is harmless. The majority opinion decides this question without deciding an issue the parties present to us: Whether the district court properly admitted evidence of Tenorio's pre-*Miranda* silence. Because the most probative evidence of Tenorio's guilty mind was his pre-*Miranda* failure to explain how he came into possession of the suitcase, I find it necessary as part of the harmless error analysis to determine whether the pre-*Miranda* silence was properly admitted.[*]

Tenorio contends (and briefs to us) that the government cannot use his pre-*Miranda* silence in its case-in-chief as substantive evidence of guilt. The constitutional basis for this extension of the prophylactic rule announced in *Miranda* is unclear to me. Were this issue one of first impression, I would decide that the pre-*Miranda* evidence was admissible. But, this court has already decided the question: The prosecution may in-

---

6. In view of our disposition of the appeal on the post-Miranda silence issue, it is unnecessary to reach the other errors asserted by Tenorio.

* With a view toward the likely retrial, reaching this issue will aid the district court on remand

and will serve the interests of judicial economy. *See U.S. v. Costa,* 31 F.3d 1073, 1080 (11th Cir.1994).

troduce as substantive evidence of guilt in its case-in-chief a defendant's pre-*Miranda* reaction to a stop and search. Admissible evidence includes that no innocent explanation was offered to the officer before the arrest. *See U.S. v. Rivera,* 944 F.2d 1563, 1568 (11th Cir.1991) ("The government may comment on a defendant's silence if it occurred prior to the time that he is arrested and given his *Miranda* warnings.").

Tenorio argues that the pertinent part of *Rivera* is dictum. I will briefly explain why this is not so. In *Rivera,* a customs officer testified about the defendant's pre-arrest demeanor as she (the defendant) was approached and as her suitcase was searched. The officer also testified about post-*Miranda* silence. *Id.* at 1567–68. On appeal, this court assumed the admission of post-*Miranda* silence was error, but held this error to be harmless because the prosecutor "was clearly entitled to comment on [the defendant's] demeanor when she was first approached . . . and later as [the] suitcase was being searched." *Id.* at 1569. Thus, the conclusion that pre-*Miranda* silence was properly admitted is not dictum, but was essential to the court's decision that an assumed error was harmless.

This court later explained *Rivera* in *U.S. v. Simon,* 964 F.2d 1082 (11th Cir.1992). There, Simon said before arrest that he did not own a certain weapon. Later, it was discovered that he did. At trial, the government introduced in its case-in-chief that Simon earlier failed to admit ownership of the weapon. Simon argued this violated his fifth amendment rights. This court responded, "[b]ecause Simon was not under arrest at the time in question, we reject his claim that the evidence . . . was inadmissible because of the fifth amendment self-incrimination provisions. *Silence is admissible in the absence of Miranda warnings.*" *Id.,* 964 F.2d at 1086 n. * (citing *Rivera* ) (emphasis added).

The law of this circuit is settled that evidence of pre-*Miranda* silence is admissible in the government's case-in-chief as substantive proof of guilt. *Cf. U.S. v. Calise,* 996 F.2d 1019, 1022 (9th Cir.1993) (error—if any—in admitting evidence of defendant's reluctance to answer police questions in government's case-in-chief harmless given curative instruction); *U.S. v. Hernandez,* 948 F.2d 316, 323 (7th Cir.1991) (momentary pre-*Miranda* silence at the time arrest is ongoing not admissible in case-in-chief); *U.S. v. Burson,* 952 F.2d 1196, 1201 (10th Cir.1991) (pre-arrest silence, where defendant has already affirmatively asserted right to silence, inadmissible in government's case-in-chief); *U.S. ex rel. Savory v. Lane,* 832 F.2d 1011, 1015–17 (7th Cir.1987) (pre-arrest silence, after defendant informs police "I won't make any statements," not admissible in case-in-chief); *Coppola v. Powell,* 878 F.2d 1562, 1567–68 (1st Cir.1989) (pre-*Miranda* statement of "if you think I'm going to confess to you, you're crazy" inadmissible because it was assertion of right to remain silent); *U.S. v. Caro,* 637 F.2d 869, 876 (2d Cir.1981) (assuming without deciding it is error to introduce pre-*Miranda* silence under similar facts, but holding any error harmless because evidence clearly admissible to impeach defendant's testimony).

Applying this rule to the record now before us, it appears that during the initial stop and inspection of his luggage, Tenorio was not in custody for *Miranda* purposes and had not been given his *Miranda* warnings. Under these circumstances, the Constitution permits the government to use Tenorio's reaction to the stop and search (including his failure to explain how he came into possession of his suitcase) as substantive evidence of guilt in its case-in-chief. Thus, the district court did not err in admitting evidence of Tenorio's pre-*Miranda* silence or demeanor.

Despite the highly probative value of this properly admitted evidence, a review of the record leads me to accept (although I think the case is a close one) that the admission of the evidence of post-*Miranda* silence was not harmless. *Cf. Rivera,* 944 F.2d at 1568 (admission of post-*Miranda* silence harmless because other evidence, including pre-*Miranda* silence, so strong). Therefore, I concur.