STATE of Utah, Plaintiff and Appellee,

v.

Ronnie C. BYRD, Defendant and Appellant.

No. 950399–CA.

Court of Appeals of Utah.

April 24, 1997.

Judith A. Jensen and Linda M. Jones, Salt Lake City, for Defendant and Appellant.

Jan Graham and Thomas B. Brunker, Salt Lake City, for Plaintiff and Appellee.

Before BENCH, BILLINGS and GREENWOOD, JJ.

## OPINION

BENCH, Judge:

Defendant Ronnie Byrd was convicted of two counts of unlawful possession of a controlled substance, a third-degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1996). He appeals the trial court's order denying his motion for a new trial. We reverse.

## FACTS

On October 12, 1993, Officer Thomas Grant was conducting surveillance of Pioneer Park for drug-related activity. The officer had been watching the north end of the park from the second story of a nearby building.

Using a high-powered telescope, Officer Grant saw a small car pull up to the curb at the north end of the park. A man approached the front passenger side of the car, spoke briefly with someone in the car, and left. Another man, who appeared to be carrying a "twist" containing drugs, then came up to the front passenger side of the car. Officer Grant testified that the man reached into the open window of the front passenger door, handing the "twist" and then another object to someone inside. It appeared to the officer that the passenger in the front seat accepted both items and handed some cash to the man. The car then pulled away from the curb and left the area.

After the car had pulled away, Officer Grant called Officers Martin Kaufman and David Thurgood, both of whom had been assigned as "take-down" officers for the drug surveillance operation. Officer Grant described the car and said that the passenger in the front seat had bought drugs at Pioneer Park. Officer Kaufman and Officer Thurgood, who were driving in separate cars, spotted the car, lost it for a few blocks, and eventually stopped it several blocks from the park.

After the stop, Officer Thurgood opened the front passenger door of the car. The officer asked defendant, who was sitting in the front passenger seat, to get out, and escorted him to the area immediately behind the car. Officer Thurgood testified that he arrested defendant, explained the *Miranda*[1] rights to him, and asked him whether he understood his rights. Defendant replied that he understood his rights. The officer further testified that, when he asked defendant if he would talk to him, defendant responded affirmatively. Officer Thurgood told defendant that the police "had him on tape buying drugs at Pioneer Park." Defendant did not, in any way, respond to this statement. While another officer stayed with defendant, Officer Thurgood searched under the front passenger seat of the car, where he found cocaine and heroin.

After defendant was arrested, Officer Thurgood and defendant departed for the jail. The officer testified that, as the police car pulled up to the jail, he asked defendant, "[W]hat's up, what's going on?" According to the officer, defendant replied that "he just wanted to get high, and that he purchased

---

1. *See Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966).

the drugs at Pioneer Park." Defendant denied having ever made such a statement.

In a pretrial interview, Officer Kaufman, who had approached the driver's side of the car after the stop, told defense counsel that he did not search the car or the other occupants of the vehicle. On direct examination at trial, however, he testified that, upon obtaining consent from the driver, he searched the entire car after Officer Thurgood had performed a "cursory" search under the front passenger seat. Officer Kaufman admitted on cross-examination that before trial he had not told defense counsel that he remembered having searched the car.

At trial, defendant admitted that he had been riding in the front passenger seat of the car, but maintained that the driver and backseat passenger had bought the drugs at Pioneer Park. Defendant further denied that he waived his *Miranda* rights or confessed to buying the drugs. On direct examination of Officer Thurgood, the prosecutor elicited testimony that defendant had remained silent after receiving the *Miranda* warning. On cross-examination of defendant, the prosecutor also referred to defendant's post-*Miranda* silence to impeach defendant's exculpatory testimony. Defense counsel timely objected to both references, but the trial court declined to rule on the objections until some time after trial. The jury found defendant guilty of the charges.

Defendant filed a motion for a new trial, arguing that the State improperly used his silence at the time of his arrest, both in its case-in-chief and to impeach him on cross-examination. He also argued that the State violated its duty to supplement discovery by failing to inform defense counsel that, after the pretrial interview, Officer Kaufman had recalled that he did search the car. *See State v. Knight,* 734 P.2d 913, 917 (Utah 1987) (discussing prosecutor's "continuing obligation to reveal newly discovered evidence that fits within the scope of prior disclosures").

■ The State responded that because defendant waived his *Miranda* rights, it could properly use his failure to deny involvement in the drug transaction when he was arrested. The State also argued that, even if it had violated its discovery obligations by failing to inform defense counsel about the change in Officer Kaufman's testimony, the error was harmless. The trial court denied the motion for a new trial, concluding that any errors committed at trial were harmless. Although we review the trial court's decision to deny the motion for a new trial under an abuse of discretion standard, *see State v. Thomas,* 830 P.2d 243, 245 (Utah 1992), any legal conclusions therein are reviewed for correctness, *see Horrell v. Utah Farm Bureau Insurance Co.,* 909 P.2d 1279, 1280 (Utah.Ct.App.), *cert. denied,* 920 P.2d 1194 (Utah 1996).

## ANALYSIS

The United States Supreme Court has held that, under the Due Process Clause of the Fourteenth Amendment, the prosecution may not use a defendant's post-*Miranda* silence for impeachment purposes. *See Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). Similarly, the prosecution may not use a defendant's post-*Miranda* silence as substantive evidence of guilt. *See United States v. Tenorio,* 69 F.3d 1103, 1106 (11th Cir.1995) (citing *Wainwright v. Greenfield,* 474 U.S. 284, 295, 106 S.Ct. 634, 640–41, 88 L.Ed.2d 623 (1986)). The prosecution's use of post-*Miranda* silence " 'prejudice[s] the defendant by attempting to create an inference of guilt in the jury's mind.' " *United States v. Newman,* 943 F.2d 1155, 1157 (9th Cir.1991) (quoting *United States v. Wycoff,* 545 F.2d 679, 681 (9th Cir. 1976)); *see also State v. Saunders,* 98 Ohio App.3d 355, 648 N.E.2d 587, 590 (1994) (noting effect of prosecutor's comment was to suggest guilt of defendant, "because an innocent person would not have remained silent").

■ In the present case, the prosecutor referred to defendant's post-*Miranda* silence on two occasions. First, the prosecutor elicited the following testimony from Officer Thurgood on direct examination:

Q [Prosecutor]: You asked the defendant to leave [the car]. Then what happened?

A [Officer Thurgood]: I asked him to exit the vehicle, come back towards me to the

rear portion of this same vehicle. I then told this person that he was under arrest, placed handcuffs on him.

Q: Then what did you do?

A: I advised this person, or the defendant, of his rights. I went through the four steps that are necessary, asked him if he would talk to me. He agreed, which was a waiver of his rights. And then proceeded to talk to the defendant.

Q: Then what happened?

A: Do you want me to go through the discussions?

Q: Yes.

A: Okay. I first off told the defendant that I had him on tape buying drugs at Pioneer Park.

Q: What did the defendant say as to that?

A: He didn't say anything. He didn't move his head.

Later, on cross-examination of defendant, the prosecutor used defendant's post-*Miranda* silence to impeach his earlier exculpatory testimony:

Q [Prosecutor]: You talked to the officer after he had advised you of your Miranda warnings, right?

A [Defendant]: No, I didn't.

Q: Do you remember him giving you the Miranda warnings?

A: I can't remember if he did or not.

Q: So it could have been or it could not have been; that's what you are saying?

A: I just know ... I didn't talk to him.

Q: You certainly did not say anything to him about the driver buying these drugs, did you?

A: I didn't say anything about no drugs, period.

Q: And certainly you didn't want to protect these guys, did you?

A: Protect them from what?

The above excerpts from the trial transcript clearly show that the prosecutor used defendant's silence both as evidence of his guilt and to impeach his exculpatory version of the events surrounding the drug transaction. Because "virtually any description of a defendant's silence following arrest and a *Miranda* warning will constitute a *Doyle* violation," *United States v. Shaw*, 701 F.2d 367, 382 (5th Cir.1983), we conclude that the State violated defendant's right to due process. *See Doyle*, 426 U.S. at 619, 96 S.Ct. at 2245; *Tenorio*, 69 F.3d at 1106; *see also United States v. Balter*, 91 F.3d 427, 437–40 (3d Cir.) (assuming, but not holding, that *Doyle* was violated where prosecutor commented on defendant's silence following *Miranda* warning and subsequent waiver of *Miranda* rights), *cert. denied*, —— U.S. ——, 117 S.Ct. 517–18, 136 L.Ed.2d 406 (1996).[2]

■ The State argues in the alternative, however, that any violation of defendant's constitutional rights was harmless beyond a reasonable doubt. *See Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993) (concluding *Doyle* violations are trial errors subject to "harmless-beyond-a-reasonable-doubt standard"). To determine whether the State's improper use of defendant's silence was harmless, we consider the following factors: "(1) whether the jury would 'naturally and necessarily construe' the comment as referring to defendant's silence; (2) whether there was overwhelming evidence of defendant's guilt; (3) whether the reference was isolated; and (4) whether the trial court instructed the jury not to draw any adverse presumption from defendant's [silence]." *State v. Reyes*, 861 P.2d 1055, 1057 (Utah.Ct.App.1993) (citation omitted).

■ In *State v. Harrison*, 805 P.2d 769 (Utah.Ct.App.), *cert. denied*, 817 P.2d 327 (Utah 1991), this court refused to hold that the jury would have naturally construed the prosecutor's statement as referring to the defendant's post-*Miranda* silence. *Id.* at 788. Because the statement "was made while commenting upon [the defendant's] trial account of the moments surrounding the shooting," it did not necessarily refer to the defendant's silence after his arrest on the following day. *Id.; see also Green v. Rob-*

---

**2.** Because we conclude that *Doyle* applies in this case, we do not reach the State's arguments regarding waiver. We therefore deny the State's motion to strike portions of defendant's reply brief.

*erts,* 798 F.Supp. 649, 652 (D.Kan.1992) (concluding that, although prosecutor's comment "could be construed" as reference to post-arrest silence, "it is equally plausible that it was a fair comment on petitioner's witnesses and evidence"), *aff'd,* 13 F.3d 405 (10th Cir. 1993). Here, unlike in *Harrison,* the officer's testimony and the prosecutor's cross-examination of defendant clearly referred to defendant's failure, following the *Miranda* warnings, to deny involvement in the drug transaction. The prosecutor's use of defendant's silence was not passing, "but rather [was] deliberate and drew inferences of guilt." *Morris v. State,* 112 Nev. 260, 913 P.2d 1264, 1268 (1996). We therefore conclude that the jury could not have construed the improper evidence as referring to anything but defendant's post-*Miranda* silence.

We next consider whether the State offered overwhelming evidence of defendant's guilt. Courts have concluded that undisputed direct evidence of the defendant's guilt may constitute overwhelming evidence. *See, e.g., Passman v. Blackburn,* 797 F.2d 1335, 1349 (5th Cir.1986) (emphasizing three witnesses "unequivocally" identified defendant as perpetrator); *Green,* 798 F.Supp. at 652 (noting several eyewitnesses saw defendant commit crime). Courts have generally refused, however, to conclude that evidence was overwhelming in cases that ultimately rested on the jury's resolution of conflicting evidence, particularly where the defendant's credibility is involved. *See Velarde v. Shulsen,* 757 F.2d 1093, 1095 (10th Cir.1985) (per curiam) (emphasizing *Doyle* error not harmless in cases resting primarily on circumstantial evidence and uncorroborated and conflicting testimonies of defendant and prosecution witnesses); *White v. State,* 647 N.E.2d 684, 688 (Ind.Ct.App.1995) (finding *Doyle* error not harmless where defendant's trial "came down to a credibility judgment; it was the victims' word against [defendant's]"); *Aesoph v. State,* 102 Nev. 316, 721 P.2d 379, 383 (1986) (noting "defendant's credibility before the jury was crucial to his defense").

Here, Officer Grant testified that the passenger in the front seat appeared to have both accepted an item resembling drugs and handed money to the seller. The officer testified, however, that he could not see the driver or backseat passenger. Defendant, who admitted that he was sitting in the front seat during the drug transaction, denied that he had accepted the drugs or passed money to the seller. Instead, he testified that the driver and backseat passenger had bought the drugs. Moreover, defendant testified that he did not know the drugs were under the front seat of the car. Finally, defendant denied that he had confessed to buying drugs. Neither the State nor defendant offered corroborating evidence to support either version of these events.

Thus, the jury in this case had to resolve several points of conflicting evidence to find defendant guilty. Because both the State and defendant offered conflicting versions of the events surrounding the drug transaction and arrest, the case came "down to a one-on-one situation, i.e., the word of the defendant against the word of the key prosecution witness[es]." *Velarde,* 757 F.2d at 1095; *see also United States v. Baker,* 999 F.2d 412, 416 & n. 6 (9th Cir.1993) (emphasizing "weak nature of the government's evidence," which rested primarily on credibility judgment). Under these circumstances, we cannot say that the evidence against defendant in this case was overwhelming.

Next, we consider whether the prosecutor's use of defendant's silence was "isolated." *Reyes,* 861 P.2d at 1057. The prosecutor introduced defendant's post-*Miranda* silence on two occasions at trial. Although no comment was made during closing argument, both references occurred on the same day of the trial, which lasted only one and one-half days. *See Velarde,* 757 F.2d at 1096 (noting prosecutor's inquiries into defendant's silence "take on greater significance" in light of short trial lasting only one day). In particular, we note that defendant was cross-examined shortly before the defense rested and the jury retired to deliberate. Therefore, although the prosecutor made only two references to defendant's silence, *cf. State v. Wiswell,* 639 P.2d 146, 147 (Utah 1981) (holding *Doyle* error prejudicial where prosecutor made five references to the defendant's post-*Miranda* silence), both

the short length of the trial and the timing of the prosecutor's references tend to weigh against the State on this factor.

Finally, the trial court waited until some time after trial to rule on defense counsel's objections. Therefore, the court did not instruct the jury "not to draw any adverse presumption from defendant's [silence]." *Reyes*, 861 P.2d at 1057; *cf. Lewis v. State*, 626 A.2d 1350, 1358 (Del.1993) (concluding error was harmless in part because trial court cured defect with jury instruction).

The prosecutor in this case clearly used defendant's post-*Miranda* silence as evidence of his guilt and to impeach his exculpatory version of the drug transaction. *See Tenorio*, 69 F.3d at 1107 ("The prosecutor's argument directly linked the implausibility of [defendant's] exculpatory story to his ostensibly inconsistent act of remaining silent."). Moreover, the evidence against defendant was not overwhelming. Finally, the trial court failed to instruct the jury not to draw any inference of guilt from defendant's post-*Miranda* silence. Because "'there is a reasonable possibility that the evidence complained of might have contributed to the conviction,'" *Passman*, 797 F.2d at 1347 (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963)), we conclude that the prosecutor's use of defendant's post-*Miranda* silence in this case was not harmless beyond a reasonable doubt.[3]

## CONCLUSION

The prosecutor's improper use of defendant's post-*Miranda* silence violated defendant's right to due process. In addition, that constitutional error was not harmless beyond a reasonable doubt. We therefore reverse the trial court's order denying defendant's post-trial motion and remand the case for a new trial.

BILLINGS and GREENWOOD, JJ., concur.

---

**3.** Because we rule in defendant's favor on this issue, we do not decide whether the State violated its obligation to supplement discovery in this case.