**STATE of Utah, Plaintiff and Appellee,**

v.

**Michael A. MORRISON, Defendant and Appellant.**

No. 960064–CA.

Court of Appeals of Utah.

May 8, 1997.

Kent E. Snider, Public Defender Ass'n, Ogden, for Defendant and Appellant.

Jan Graham, Atty. Gen. and Kenneth A. Bronston, Asst. Atty. Gen., Criminal Appeals Div., Salt Lake City, for Plaintiff and Appellee.

Before BILLINGS, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Michael Morrison appeals his convictions, after a jury trial, of possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8 (1996), and possession of a dangerous weapon by a restricted person, a third degree felony, in violation of Utah Code Ann. § 76–10–503 (1995). Morrison claims, among other things, that at trial, the prosecution elicited prejudicial references to his post-arrest silence during examination of two witnesses. We reverse Morrison's convictions and remand for a new trial.

## BACKGROUND [1]

On January 17, 1995, Layton City police officers arrived at Morrison's home to exe-

---

1. We recite the facts in a light most favorable to the jury's verdict. *See State v. Beltran–Felix,* 922 P.2d 30, 31 n. 2 (Utah.Ct.App.1996).

cute an arrest warrant unrelated to the facts of this case. At the house, the officers first encountered Morrison's mother, who directed them to Morrison's bedroom in the basement. Upon entering the room, the officers discovered Morrison in bed with Jill Crittenden and observed Crittenden quickly reach over Morrison and stash a syringe in a nearby dresser drawer. The officers arrested Morrison and Crittenden and administered *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 467–73, 86 S.Ct. 1602, 1624–27, 16 L.Ed.2d 694 (1966).

A subsequent search of the room uncovered drugs, drug paraphernalia, and a loaded gun. The gun was found in a dresser drawer along with a prescription bottle with Morrison's name on it, a video rental card with Morrison's name on it, a work order for Morrison's car, and a letter addressed to Morrison. In addition, the officers discovered that one of the bullets in the gun had "K. Allen" written on it. The name of Morrison's parole officer at the time was Kim Allen.

Morrison was charged with, among other things, possession of a controlled substance with intent to distribute and possession of a dangerous weapon by a restricted person. *See* Utah Code Ann. § 58–37–8 (1996) (possession with intent to distribute), § 76–10–503 (1995) (possession of dangerous weapon by restricted person). At trial, one of the arresting officers, Detective Alan Swanson, testified that Morrison had initially said there were no drugs in the room that he knew of, and when asked about the syringe Crittenden had hidden, Morrison said he did not know it was there. Detective Swanson also testified that when asked if there was a gun in the room, Morrison initially answered no, but when asked about bullets that were in plain view, he indicated that there might be a gun in the room. According to Officer Swanson, Morrison eventually said that there may be a gun in his dresser drawer, the same dresser drawer where Swanson found the gun loaded with the "K. Allen" bullet. Also, Officer Swanson indicated that Morrison admitted to him at that time that he and Crittenden had used drugs the night before.

Another arresting officer, Officer Robert Price, also testified. During this testimony, the prosecution elicited the following statements regarding the events that occurred after Morrison's arrest and the officers had administered the *Miranda* warnings:

The prosecutor: Did you ever interview or specifically interrogate [Morrison]?

Officer Price: I started talking to him very briefly upstairs.

The prosecutor: Was that in [Crittenden's] presence?

Officer Price: Yes, it was.

The prosecutor: And did he initially indicate a willingness to talk to you?

Officer Price: I got the indication that he was willing to talk to me.

The prosecutor: And did [Crittenden] do or say something that stopped him?

Officer Price: She told him to shut up.

The prosecutor: Did he do that?

Officer Price: He did.

The prosecutor: Did she tell him once or more than once?

Officer Price: It was twice that she told him to shut up.

Defense counsel did not object to this line of questioning.

Crittenden also testified, admitting her connection with the January 17 episode and that she had been convicted of possession and distribution of a controlled substance in connection with the episode. Crittenden testified that the controlled substances and drug paraphernalia in the room were hers. She testified that she had, at some point prior to the January 17 episode, negotiated with an undercover agent for the sale of a firearm which at the time she said belonged to Morrison.[2] She further testified that the gun actually did not belong to Morrison and that because she had been negotiating for its sale, she took the gun from an upstairs room of Morrison's house and put it in the drawer in Morrison's room. She said she had received the bullets that were in the gun from a friend and took them to Morrison's house.

---

**2.** This was later confirmed by testimony of the undercover agent.

The prosecution also asked Crittenden about telling Morrison to "shut up," resulting in the following testimony:

> The prosecutor: Okay. And, in fact, specifically when the police officer from Layton was trying to talk to [Morrison] at [Morrison's] home, you were telling [Morrison] to shut up?
>
> Crittenden: I had my lawyer on the phone. He told me to—I was talking to [my lawyer] on the phone while the police were there.
>
> The prosecutor: So the answer is?
>
> Crittenden: He advised me to be quiet and for [Morrison] to do the same.
>
> The prosecutor: So the answer is yes, you told [Morrison] to shut up?
>
> Crittenden: Yes, I did.

Defense counsel did not object to this line of questioning.

Morrison's stepfather also testified. He said that the pistol was his and that he had left it on a shelf in an upstairs bedroom of the house.

Morrison testified in his own defense. He claimed the drugs and the drug paraphernalia were Crittenden's. He also denied having directed Officer Swanson to the gun or having admitted to Officer Swanson that he and Crittenden had used drugs the night before the arrest. Morrison testified that Allen was his friend and that he did not write the name "K. Allen" on the bullet.

### ISSUE

We address the following dispositive issue: Did the trial court commit plain error by not sua sponte intervening when the prosecutor elicited testimony that improperly referred to Morrison's choice to remain silent after being arrested and after the *Miranda* warnings had been administered?

### ANALYSIS

■ Morrison claims that the prosecutor elicited testimony which improperly alluded to his post-*Miranda* silence. The State maintains that the alleged testimony does not improperly allude to Morrison's choice to remain silent, and that in any event,

any error was not prejudicial. Because Morrison's counsel did not object to the disputed testimony at trial, he must now convince this court that the trial court committed plain error by allowing the allegedly improper testimony. *See State v. Reyes,* 861 P.2d 1055, 1057 (Utah.Ct.App.1993). To succeed on a plain error claim, Morrison must demonstrate that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn,* 850 P.2d 1201, 1208 (Utah 1993).

■ It is error of a nature that should be obvious to a trial court when the prosecutor violates the well-established general rule prohibiting him or her from eliciting testimony of a defendant's post-*Miranda* silence. *See Reyes,* 861 P.2d at 1057; *see also Doyle v. Ohio,* 426 U.S. 610, 617–20, 96 S.Ct. 2240, 2244–45, 49 L.Ed.2d 91 (1976); *State v. Wiswell,* 639 P.2d 146, 147 (Utah 1981). Thus, it was plain error for the prosecutor in this case to elicit testimony from both Crittenden and Officer Price regarding Morrison's decision to remain silent.

■ To establish that this error did not prejudice defendant, the State bears the burden of demonstrating that the improperly elicited testimony was harmless beyond a reasonable doubt. *See Brecht v. Abrahamson,* 507 U.S. 619, 628–29, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993). In evaluating whether an evidentiary error was harmless beyond a reasonable doubt, we focus on "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963); *accord Chapman v. California,* 386 U.S. 18, 25–26, 87 S.Ct. 824, 828–29, 17 L.Ed.2d 705 (1967); *State v. Young,* 853 P.2d 327, 359 (Utah 1993) (Hall, C.J. & Howe, J., concurring); *State v. Genovesi,* 909 P.2d 916, 922 (Utah.Ct.App.1995). Additionally, to guide our analysis, we consider the following factors: "(1) whether the jury would 'naturally and necessarily construe' the comment as referring to defendant's silence; (2) whether there was overwhelming evidence of defendant's guilt; (3) whether the reference was isolated; and (4)

whether the trial court instructed the jury not to draw any adverse presumption from defendant's decision not to testify." *Reyes,* 861 P.2d at 1057.

■ Applying the *Reyes* factors to the instant case, we first note that Crittenden's and Officer Price's testimonies would naturally have been recognized as referring to defendant's silence.[3] Indeed, the clear implication of the testimonies was that Morrison might have given incriminating information, but for Crittenden's entreaty to remain silent. *Cf. State v. Byrd,* 937 P.2d 532, 534 (Utah Ct.App.1997) (noting "[t]he prosecution's use of post-*Miranda* silence prejudice[s] the defendant by attempting to create an inference of guilt in the jury's mind." (quotation marks and citations omitted)).

Second, the improper references to Morrison's post-*Miranda* silence were not isolated. In the course of a trial which lasted only one and one-half days, the references occurred twice, during two different witnesses' testimonies. *Cf. Velarde v. Shulsen,* 757 F.2d 1093, 1096 (10th Cir.1985) (noting "greater significance" of improper evidence of defendant's post-arrest silence in relatively short trial).

Third, the trial court gave neither a curative instruction specifically regarding the improper testimony, nor a general instruction regarding Morrison's right to remain silent after arrest. In *Reyes,* this court emphasized the importance of a curative instruction in curing the effects of an improper reference to a defendant's post-arrest silence. *See Reyes,* 861 P.2d at 1057 ("'A curative instruction is often mentioned by courts as an important consideration in reviewing the constitutionality of prosecutorial comments.'" (quoting *State v. Hales,* 652 P.2d 1290, 1292 (Utah 1982))). Accordingly, the lack of any instruction which might have ameliorated the

effects of the improper testimony in this case weighs against a finding of harmless error.

■ Because the improper testimony clearly referred to Morrison's post-*Miranda* silence, was not isolated, and was not cured by an instruction to the jury, the sole *Reyes* factor the State may rely on to establish harmless error is whether the evidence of Morrison's guilt was overwhelming. In determining whether the evidence was so overwhelming as to overcome the constitutional error in this case, we examine both the amount of evidence indicating guilt as well as the nature of the State's case and of the defendant's defense. For instance, we may consider: (1) whether the State's case is based on circumstantial rather than direct evidence; (2) the plausibility of any exculpatory explanation for the set of circumstances leading to the charges; (3) whether the case depends primarily on the resolution of conflicting evidence consisting of uncorroborated and conflicting testimonies; and (4) the extent to which the defense rested on the defendant's credibility. *See Velarde,* 757 F.2d at 1095; *Byrd,* 937 P.2d at 536–37.

While we agree that the evidence against Morrison was fairly strong, it was, nevertheless, mostly circumstantial, consisting mainly of the fact that Morrison was in a room with prohibited items. Morrison explained these circumstances by claiming that the drugs, drug paraphernalia, and gun belonged to and were under the control of Crittenden, who was found in the room with him. To support this defense, Crittenden and Morrison testified as such, and other testimony was consistent with this version of the facts. Thus, Morrison's exculpatory explanation was plausible, and the case turned in large part on his credibility. As such, we are not convinced the evidence of Morrison's guilt was overwhelming. Because none of the *Reyes* factors has been satisfied, we conclude that the

---

3. Citing *United States v. Warren,* 578 F.2d 1058, 1072–73 (5th Cir.1978), *rev'd in part on other grounds,* 612 F.2d 887 (5th Cir.1980) (en banc), the State suggests that Crittenden's testimony was not a comment on Morrison's choice to remain silent because she did not testify to Morrison's response to her entreaty. *Cf. id.* at 1073 (finding no error where "[a]ll that the testimony

indicated was that [the defendant] advised [the codefendants] not to say anything. The jury could not have known whether the advice was in fact heeded."). *Warren* is plainly inapposite to the instant case, however, because the jury here did, in fact, know that Morrison heeded Crittenden's command to remain silent, via Officer Price's testimony.

impermissible testimony regarding Morrison's post-*Miranda* silence was prejudicial.[4]

## CONCLUSION

At trial in this case, the prosecution improperly elicited testimony which referred to Morrison's constitutionally guaranteed right to remain silent after being arrested. Although defense counsel did not object, the prosecutor's actions constituted plain, constitutional error. Upon reviewing the evidence presented at trial, we cannot say the error was harmless beyond a reasonable doubt. We therefore reverse Morrison's convictions and remand for a new trial.

BILLINGS and JACKSON, JJ., concur.

---

4. Because of our disposition of this issue, we need not address Morrison's remaining claims of error.