Lane F. SMITH, M.D., Plaintiff,

v.

DAVIS SURGICAL CENTER, LLC, Defendant.

No. 1:06–CV–00015.

United States District Court, D. Utah, Central Division.

Jan. 27, 2006.

Kenneth D. Lougee, Siegfried & Jensen, Murray, UT, for Plaintiff.

Gary R. Guelker, Janet I. Jenson, Jenson Stavros & Guelker, Salt Lake City, UT, Keith A. Kelly, Ray Quinney & Nebeker, Salt Lake City, UT, for Defendant.

## ORDER

BENSON, District Judge.

This case originates in a dispute regarding the purchase price paid by Defendant Davis Surgical Center for Plaintiff Lane Smith's shares in the Center.[1] The contract between Plaintiff and Defendant provides that some shares in the Center may be sold at fair market value while others are subject to a cap of five hundred percent of the initial offering price. At oral argument on the motion, the Court rejected Plaintiff's assertion that the provision setting out the formula for valuing shares contained repugnant provisions, but permitted the parties to submit further briefing to address whether the relevant provision was ambiguous. Having considered the parties' briefing and the relevant law, the Court is now satisfied that the provision is unambiguous and GRANTS Defendant's motion for summary judgment.

█ The parties agree that Dr. Lane's loss of admitting privileges at Lakeview Hospital constituted a buy-sell event under the Operating Agreement. Paragraph 13.5 of the Operating Agreement sets out the purchase price for shares upon the occurrence of such an event:

The purchase price for the Withdrawing Member's Membership Interest shall be the fair market value of the Withdrawing Member's Membership Interest as determined by a single appraisal made by an appraiser agreed upon by the Company or Purchasing Member(s), whichever may be the case, and the Withdrawing Member, which appraisal shall be final; *provided, however, that, except in connection with a sale of Class II Units or any interest of a Class III Member to any Person other than the Company or an existing Class I Member in no event shall the purchase price per unit exceed an amount that is equal to the lesser of (I) five hundred percent (500%) of the initial offering price per Unit of the Withdrawing Member's Percentage Interest,* or (ii) such initial offering price multiplied by the number of years (or portion thereof) that have elapsed since the opening of the Facility.

Complaint, Dkt. No. 1 at 44 (emphasis added). The parties also agree that Dr. Lane's shares were Class I shares. The parties cannot agree, however, on which class(es) of shares are subject to the 500% price cap.

Plaintiff argues that the (rather remarkable) phrase "provided, however, that, except" means that all sales of Class II shares and some sales of Class III shares are subject to the cap; Dr. Lane's sale of Class I shares should, under this reading, have been made at fair market value.[2]

---

1. Plaintiff's claims against individual members of the board of directors of Davis Surgical Center and his fraud claims were dismissed on August 21, 2006.

2. Plaintiff argues that his reading is the only one possible because the cap in the second half of Paragraph 13.5 is repugnant to the promise of fair market value in the first half. *See* Pl. Supp. Rep. Br. at 2–3. Plaintiff fails to grasp that the fair market value of the shares will determine the price at which they are sold so long as fair market value is below the cap. There is nothing contradictory in

Defendant, however, maintains that "provided, however, that" establishes the cap as the general rule to which Class II and some Class III sales are an exception.

While Paragraph 13.5 could scarcely have been more poorly drafted, it does in the end limp to a meaning that is unambiguous. The central difficulty lies in the interpretation of "provided, however, that, except." Plaintiff spends a good deal of time explaining that "except" creates an exception, but ignores the words that precede it. And for good reason. Plaintiff's reading depends on collapsing the three words that precede "except" into "except" so that the clause may be summarized as setting the purchase price at fair market value except with regard to certain sales of Class II and Class III shares, which are subject to a cap. But a reading that deprives three words of any meaning at all is hardly a natural one. The reading that assigns meaning to all four of the words introducing the second half of Paragraph 13.5 is the Defendant's: the purchase price is fair market value, provided, however, that there is a cap except in the case of certain Class II and Class III shares. In other words, Plaintiff's reading makes "provided, however, that, except" into a single rhetorical flourish to convey the meaning "but."[3] Defendant's reading gives each of the words meaning: "however" indicates a limitation on the preceding rule, "provided that" introduces the limitation and "except" sets out an exception to the limitation.

 A contract does not become ambiguous if it is possible to wrest more than one meaning from its terms: "to merit consideration as an interpretation that creates an ambiguity, the alternative rendition must be based upon the usual and natural meaning of the language used and

may not be the result of a forced or strained construction." *Saleh v. Farmers Ins. Exchange,* 133 P.3d 428, 433 (Utah 2006). There is nothing usual or natural about Plaintiff's amalgamation of "provided, however, that, except" into a single (and singular) compound conjunction. Because Plaintiff's proposed reading of Paragraph 13.5 is not plausible, it does not create an ambiguity that would preclude granting Defendant's motion for summary judgment. *See Alf v. State Farm Fire and Cas. Co.,* 850 P.2d 1272, 1274 (Utah 1993) (contract ambiguous if "the terms used to express the intention of the parties may be understood to have two or more plausible meanings") (quotations and citation omitted); *First American Title Ins. Co. v. J.B. Ranch, Inc.,* 966 P.2d 834, 837 (Utah 1998) ("[P]olicy terms are not necessarily ambiguous just because one party seeks to endow them with a different interpretation according to his or her own interests. Rather, the interpretation proposed must be plausible and reasonable in light of the language used.") (quotations and citations omitted).

The reading of Paragraph 13.5 proposed by Plaintiff is not reasonable in light of the language of that provision. Defendant's interpretation, that sales of Class I shares are capped at 500% of the initial offering price, is the only one that gives effect to all the words of Paragraph 13.5. Defendant's motion for summary judgment is accordingly GRANTED.

**IT IS SO ORDERED.**

---

permitting a fair market valuation up to a predetermined limit.

**3.** It is worth noting that a colon should follow "except" if Plaintiff's reading is correct.