2011 UT App 422

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jeffrey Michael GALLUP, Defendant and Appellant.**

**No. 20100231–CA.**

Court of Appeals of Utah.

Dec. 8, 2011.

Brook J. Sessions, Provo; and Anthony V. Rippa, Murray, for Appellant.

Mark L. Shurtleff and Kenneth A. Bronston, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and VOROS.

## OPINION

DAVIS, Presiding Judge:

¶ 1 Jeffrey Michael Gallup appeals his convictions for failing to respond to an officer's signal to stop, a third degree felony, *see* Utah Code Ann. § 41–6a–210(1) (2010); speeding,

a class C misdemeanor, *see id.* § 41–6a–601; and driving on a suspended or revoked operator license, a class C misdemeanor, *see id.* § 53–3–227(1)–(2). We reverse and remand.

## BACKGROUND

¶ 2 The facts are not disputed. On October 22, 2008, at approximately 11:22 p.m., Utah Highway Patrol Trooper Jared Clanton clocked a vehicle traveling eighty-eight miles per hour in a sixty-five mile-per-hour zone on the southbound side of Interstate 15 (I–15) in Lehi, Utah. The trooper pulled the vehicle over and communicated the vehicle's license plate number to dispatch. The trooper identified the vehicle as a blue, four-door BMW with rear- and side-window tinting.

¶ 3 As the trooper approached the vehicle from the passenger side, it suddenly accelerated and sped away. The trooper did not have a chance to turn on his flashlight but did briefly observe the driver through the tinted rear passenger side window. The driver was silhouetted by the squad car's headlights, and the rear view mirror was tilted so that the trooper could not catch a glimpse of the driver's face in its reflection. The trooper observed that the driver was a white male with brown hair, between thirty and thirty-five years old, and between 190 and 200 pounds. A car chase ensued, but the trooper eventually terminated his pursuit after following the BMW off the highway into a residential area of Lehi.

¶ 4 The trooper ascertained that Jeffrey Gallup was the registered owner of the BMW and obtained a driver license image of Gallup. The license picture was consistent with the trooper's brief observation of the BMW driver. The trooper then obtained Gallup's phone number and called the number at around 12:20 a.m.—about one hour after the initial speeding incident occurred. A male voice answered the phone, and the trooper asked, " 'Is Mr. Jeffrey Gallup there?' " The person at the other end of the line responded, " 'This is Jeffrey.' " The trooper then identified himself and stated, " 'I was wondering if you could tell me your location. I'd

like to meet with you for just a few minutes and talk to you about an incident.' " The telephone line was silent for a moment before Gallup hung up the phone with no further discussion or comment. Charges were filed in March 2009, several months after the October incident.

¶ 5 A jury trial was held on January 5, 2010, at which time Gallup raised several issues in a motion in limine.[1] Those issues included a claim that the trooper's proffered testimony that Gallup hung up on him infringed on Gallup's "right against self-incrimination" because it "insinuate[d] that [Gallup] was guilty in some way." The State asserted that the hang-up was akin to a party admission under the hearsay exceptions of the Utah Rules of Evidence. The trial court agreed with the State and determined that neither case law nor the Utah Rules of Evidence prohibited admission of the hang-up evidence.

¶ 6 At trial, the State focused its direct examination of the trooper on the phone call and particularly on the fact that Gallup hung up on the trooper:

[Trooper]: ... I explained who I was. "I'm Trooper Clanton with the Highway Patrol, and I was wondering if you could tell me your location. I'd like to meet with you for just a few minutes and talk to you about an incident," and there was—and then at that point there was a brief moment of silence, possibly a second or so, and then the conversation ended.

[Prosecutor]: Okay.

[Trooper]: The person on the other end of the phone hung up the phone.

[Prosecutor]: So he hung up on you?

[Trooper]: Correct.

[Prosecutor]: He didn't say, "Hey, I'm glad you called. I wanted to talk to you. Someone has my car," anything like that?

[Trooper]: No.

[Prosecutor]: Just hung up on you?

[Trooper]: Yes.

---

1. The trial court treated Gallup's evidentiary challenges as a motion in limine, although it is unclear if that is actually how the issues were raised. Additionally, *several of the challenges presented in that motion are not at issue on appeal and are therefore not recounted here.*

During cross-examination, defense counsel asked the trooper, "[I]f [a police officer] were to just call anybody at night and want to talk to them, they're not under a legal obligation to converse ... or speak, are they?" To which the trooper answered, "They're free to say whatever they want, or not to speak."

¶ 7 After the State rested its case, Gallup decided to testify in his defense even though he "had not intended ... to testify." Gallup explained that "[i]f [he] had been successful on the objection to the ... phone call evidence coming in, he would have had no reason to testify, and he would not have been testifying" but that "because [he] was overruled on that, and that evidence came in, it appear[ed] necessary that he ... testify." The State objected on the grounds that Gallup's testimony as to the incident would "necessarily implicate whether or not he was present in the vehicle" and would thus constitute an alibi defense of which the State had not received notice. *See generally* Utah Code Ann. § 77–14–2(1) (2008) (requiring a defendant intending to introduce alibi evidence to notify the State of such within at least ten days before trial).

¶ 8 Gallup argued that section 77–14–2(3) permits a defendant to testify on his own behalf regardless of whether he complied with the notice requirement. The trial court disagreed, determining that the section Gallup characterized as an exception "simply means if he wants to establish his own alibi and doesn't have other witnesses he may do so, but he still has to give notice." The trial court ruled that Gallup would be permitted to testify in vague terms—i.e., that he does not recall where he was the night of the incident, or that he knows he was not on I–15 that night—but that the court "would strike any testimony that start[ed] to establish a [specific] place where [Gallup] was that night, as opposed to being on the freeway at the time the officer was chasing this particular vehicle that was registered to him."

¶ 9 Ultimately, Gallup testified simply that he was not driving the BMW at the time of the incident.[2] On cross-examination, the State asked Gallup who was driving his car if it was not him, to which Gallup responded, "I do not know." The State then dropped that line of questioning and proceeded to ask Gallup about the phone call:

[Prosecutor]: At that point didn't it seem important to talk to the officer a little more about the incident and figure out what he was talking about?

....

[Gallup]: At that time, no.

[Prosecutor]: Didn't seem important to ask the officer more about what he was calling you about?

[Gallup]: At that time, no, I did not know why he was calling me.

[Prosecutor]: Okay. Did you ask the officer, "Hey, why are you calling me?"

[Gallup]: I did not, and he did not relate that to me.

[Prosecutor]: Okay, did he—why didn't you respond to him when he said, "This is Trooper Clanton. I've been on the freeway. I want to talk to you about some events that happened tonight[?"]

....

[Prosecutor]: Why did you hang up on him?

[Gallup]: I was under the impression he was calling on another matter.

[Prosecutor]: Okay, so did you then follow up with him about that matter and ask more questions, or did you just hang up on him?

....

[Gallup]: I hung up on Officer Clanton at that point.

¶ 10 During closing arguments, the State emphasized the importance of the phone call, noting that "when [Gallup] had an opportunity ... within an hour of this incident, he failed to take that opportunity to talk to the officer about the incident, to explain it away somehow." The State continued,

---

2. Gallup also testified that his car was gray, not blue as the trooper indicated, and that at the time of the incident, he weighed approximately 220 pounds, not between 190 and 200 pounds.

Gallup also explained that the tint on his car windows provided a "35 percent light diffusion," which is a "high ... level of tint."

What happened was he hung up the phone. Is that reasonable to believe that he was just confused. That he was just exercising his right to remain silent. Is that what he said to you today? Did he say, "I decided to exercise my right to remain silent, and I hung up." That's not what he said.

Gallup objected, arguing that "the defendant's not required to say that[,] and [that] making comments upon his exercising of that right in closing is inappropriate." The court overruled the objection but cautioned that "enough [had] been said" on the matter. The State ended its closing argument stating, "Hanging up that phone, ladies and gentlemen, showed his consciousness of guilt."

¶ 11 After closing arguments and during deliberations, the jury submitted a question to the trial court asking, " 'Would it have been allowed for the prosecuting attorney to ask the defendant where he was on the night of October 22?' " The court drafted an answer, with the attorneys for each party present, that stated, "Due to an earlier evidentiary ruling made by the court, neither party was allowed to ask that question." The jury subsequently found Gallup guilty on all charges. Gallup now appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 12 Gallup argues that the trial court committed error when it admitted the telephone call evidence and excluded his alibi testimony. "[W]e grant a trial court broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of discretion," which "may be demonstrated by showing that the [trial] court relied on an erroneous conclusion of law or that there was no evidentiary basis for the trial court's ruling." *Daniels v. Gamma W. Brachytherapy, LLC*, 2009 UT 66, ¶ 32, 221 P.3d 256 (first alteration in original) (internal quotation marks omitted). In this case, Gallup contends that the trial court abused its discretion because the admission of the telephone call evidence in the State's case-in-chief violated his Fifth Amendment right against self-incrimination and was based on an erroneous interpretation of the Utah Rules of Evidence. He further contends that the trial court misinterpreted and misapplied Utah Code sec-

tion 77–14–2 in excluding his alibi testimony. "Constitutional issues ... are questions of law that we review for correctness." *Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177. "We [also] review a trial court's statutory interpretation for correctness, according it no particular deference." *State v. Masciantonio*, 850 P.2d 492, 493 (Utah Ct.App.1993). Lastly, where we find that an error has been committed, reversal is warranted when "the error is prejudicial." *See State v. Jacques*, 924 P.2d 898, 900 (Utah Ct.App.1996).

## ANALYSIS

### I. Admissibility of the Telephone Call Evidence

■ ¶ 13 Gallup argues that admission of the telephone call evidence, particularly the evidence surrounding the hang-up, violated his pre-arrest right to remain silent. The trial court justified the admission of the telephone call evidence as part of the State's case-in-chief under the Utah Rules of Evidence, ruling that silence can constitute a party admission under the hearsay rules and that admission of Gallup's silence was not more prejudicial than probative. We agree with Gallup.

■ ¶ 14 The Fifth Amendment to the United States Constitution provides, "No person shall be ... compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V.

> The Fifth Amendment right to silence is a comprehensive privilege that "can be claimed in any proceeding, be it criminal or civil, administrative or judicial, *investigatory* or adjudicatory.... [I]t protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used."

*State v. Palmer*, 860 P.2d 339, 347 (Utah Ct.App.1993) (alteration and omission in original) (additional internal quotation marks omitted) (quoting *In re Gault*, 387 U.S. 1, 47–48, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)).

■ ¶ 15 A person is protected from " 'compelled self-incrimination at all times, not just upon arrest or during a custodial

interrogation.' " *Id.* at 349 (quoting *State v. Fencl,* 109 Wis.2d 224, 325 N.W.2d 703, 711 (1982)).[3] "Merely because an individual does not need to be advised of his right to remain silent until he is subject to a custodial interrogation does not mean he should be penalized for invoking that right earlier." *Palmer,* 860 P.2d at 349. Indeed, the *Miranda* warning itself is framed as a right to *remain* silent, implying that the right to be silent exists before a *Miranda* warning is necessary. *See State v. Easter,* 130 Wash.2d 228, 922 P.2d 1285, 1290 (1996) (en banc) ("*Miranda* indicates the right to silence exists prior to the time the government must advise the person of such right when taking the person into custody for interrogation."); *cf. Palmer,* 860 P.2d at 349. However, once a defendant takes the witness stand, evidence of privileged pre-*Miranda* silence can be used for impeachment purposes. *See Palmer,* 860 P.2d at 348 ("[U]se of privileged silence for impeachment purposes is constitutional unless the silence was potentially induced by the government's delivery of *Miranda* warnings."); *see also Jenkins v. Anderson,* 447 U.S. 231, 238, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) ("[T]he Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility."); *United States v. Burson,* 952 F.2d 1196, 1201 (10th Cir.1991) (acknowledging that a defendant's pre-arrest silence may be admitted for impeachment purposes, but that it is otherwise "impermissible for the prosecution to refer to any Fifth Amendment rights which defendant exercised").

¶ 16 The facts of this case are quite similar to those in *State v. Palmer,* 860 P.2d 339 (Utah Ct.App.1993). In *Palmer,* the defendant was suspected of sexually abusing a minor child. *See id.* at 341. A detective contacted the defendant by telephone to ask him about the allegations. *See id.* The detective stated that during the telephone call, the defendant stated that " 'he wanted to get some advice' before talking" but " 'never once claimed [that the abuse] didn't happen.' " *Id.* These statements were admitted over the defendant's objections, and subsequently, the defendant decided to take the stand to testify and explain himself. *See id.* at 345–46. The State proceeded to use the detective's statements to argue "that [the] defendant's choice to remain silent and neither admit nor deny guilt ... showed a consciousness of guilt." *Id.* at 346. The defendant appealed, arguing that admission of the detective's statements "to support an inference of guilt was unconstitutional" and violated his Fifth Amendment rights "to not have his decision to seek advice and neither admit nor deny the charges against him placed in evidence in the prosecution's case in chief to prove culpability." *Id.* This court agreed, noting that the State did not use the contested statements merely as a tool to impeach the defendant; they were admitted before the defendant had decided to take the stand. *See id.* at 348–49. The State's arguments, as presented in closing, indicated that the contested statements were being used to demonstrate the defendant's guilt. *See id.* at 346, 349. The court determined that "[m]erely because an individual does not

---

**3.** Utah and the Tenth Circuit both recognize a pre-arrest right against self-incrimination, *see United States v. Burson,* 952 F.2d 1196, 1200–01 (10th Cir.1991); *State v. Palmer,* 860 P.2d 339, 346–50 (Utah Ct.App.1993), but some jurisdictions do not. The federal courts are split on the question, *see Carter v. Ward,* 347 F.3d 860, 864 (10th Cir.2003) (noting that the United States "Supreme Court specifically left th[e] issue [of the admissibility of pre-arrest silence] undecided in *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 ... (1980)," and that "[t]he circuit courts have debated the matter ever since with no decisive majority position emerging"); *State v. Leach,* 102 Ohio St.3d 135, 2004–Ohio–2147, 807 N.E.2d 335, at ¶¶ 26–27 (observing that "[t]he Fifth, Ninth, and Eleventh Circuit Courts of Appeals have held that evidence of pre-

arrest, pre-*Miranda* silence as substantive evidence of guilt is admissible in the state's case-in-chief" because the "pre-arrest environment lacks the government coercion or compulsion implicit in an understanding of the Fifth Amendment," while "[t]he First, Sixth, Seventh, and Tenth [C]ircuit [C]ourts of [A]ppeals have reached opposite results"). The division of authority among the states, however, is more one-sided in favor of recognizing the right. *See State v. Kulzer,* 2009 VT 79, ¶ 14, 186 Vt. 264, 979 A.2d 1031 (recognizing that courts in Idaho, Massachusetts, Nebraska, New Hampshire, North Carolina, Ohio, Utah, Virginia, Washington, Wisconsin, and Wyoming have held that evidence of pre-arrest silence is inadmissible in the state's case-in-chief, while only courts in Connecticut, Michigan, and North Dakota have held the opposite).

need to be advised of his right to remain silent until he is subject to a custodial interrogation does not mean he should be penalized for invoking that right earlier." *Id.* at 349. The court then concluded that the contested testimony "implicat[ed the] defendant's decision to remain silent" and that "the prosecutor's cross-examination of [the] defendant and closing arguments based on that testimony, used to demonstrate [that the] defendant had a consciousness of guilt[,] was error." *Id.* at 349–50.

¶ 17 Here, Gallup hung up the phone on the police officer and explained during arguments on his motion in limine that the hang-up was an exercise of his right against self-incrimination. The State argued that Gallup's silence via the hang-up inexorably demonstrated his guilt. But, as the trooper indicated on cross-examination, Gallup was not obligated to answer his questions or have a conversation with him: Gallup was "free to say whatever [he] want[ed], or not to speak." Thus, the import of the trial court's ruling admitting Gallup's silence placed Gallup in "a veritable 'Catch–22'" because both of his options—to speak with the trooper or to remain silent—would be admissible against him. *See id.* at 349 (quoting *Fencl,* 325 N.W.2d at 711); *see also Fencl,* 325 N.W.2d at 711 ("Any time an individual is questioned by the police, that individual is compelled to do one of two things—either speak or remain silent. If both a person's prearrest speech and silence may be used against that person, ... that person has no choice that will prevent self-incrimination."). And once the evidence of silence was admitted, Gallup's quandary persisted; he could choose between "permit[ting] the jury to infer guilt from [his] silence or surrender [his] right not to testify and take the stand to explain [his] prior silence." *State v. Leach,* 102 Ohio St.3d 135, 2004–Ohio–2147, 807 N.E.2d 335, at ¶ 31 ("Allowing the use of pre-arrest silence, evidenced here by the pre-arrest invocation of the right to counsel, as substantive evidence of guilt in the state's case-in-chief undermines the very protections the Fifth Amendment was designed to provide."); *see also Combs v. Coyle,* 205 F.3d 269, 285 (6th Cir.

2000) (observing that the "use of a defendant's prior silence as substantive evidence of guilt actually lessens the prosecution's burden of proving each element of the crime," especially in light of the fact that "[t]he probative value of such silence is ... minimal" because "there are many reasons why a defendant may remain silent before arrest, such as a knowledge of his *Miranda* rights or a fear that his story may not be believed," and therefore "the use of prearrest silence may even subvert the truthfinding process[]" because it pressures the defendant to explain himself or to suffer a court-sanctioned inference of guilt, [increasing] the likelihood of perjury"). Although the State could introduce the silence evidence to impeach Gallup once he took the witness stand, that is not what occurred here; the State introduced the silence evidence before Gallup had even *decided* to testify, and Gallup claims that is precisely what prompted him to testify when he was otherwise not inclined to do so.

¶ 18 Therefore, the trial court's admission of the silence evidence was error. The fact that the Rules of Evidence may have permitted admission of Gallup's silence under different circumstances is irrelevant here. The Rules of Evidence cannot trump Gallup's right against self-incrimination. *See* Utah R. Evid. 501 ("Except as provided in the Constitutions of the United States and the State of Utah [and in the Rules of Evidence], no person shall have a privilege to withhold evidence...."); *State v. Travis,* 541 P.2d 797, 799 (Utah 1975) (concluding that a defendant's Fifth Amendment right against self-incrimination trumped the admission of affidavit evidence that would have otherwise been admissible under the hearsay rules, even where the defendant made statements under oath in support of his motion for a new trial, because he had made those statements with the trial court's assurances that such statements would not constitute a waiver of his right to remain silent in subsequent proceedings). Likewise, the State should not have been permitted to rely on the silence evidence in its case-in-chief.[4] *See Travis,*

---

4.  The State contends that any right Gallup had to refuse to answer the trooper's questions had to

be exercised explicitly, i.e., by telling the trooper he was exercising his right to remain silent. The

541 P.2d at 799 ("[T]he exercise of the privilege is not evidence to be used in the case[-in-chief of] any party." (emphasis and internal quotation marks omitted)).

## II. Exclusion of Alibi Testimony

¶ 19 Next, Gallup argues that the trial court erred when it limited the scope of his alibi testimony.[5] The trial court based this ruling on its interpretation of Utah Code section 77–14–2, which provides,

> (1) A defendant, whether or not written demand has been made, who intends to offer evidence of an alibi shall, not less than ten days before trial or at such other time as the court may allow, file and serve on the prosecuting attorney a notice, in writing, of his intention to claim alibi. The notice shall contain specific information as to the place where the defendant claims to have been at the time of the alleged offense and, as particularly as is known to the defendant or his attorney, the names and addresses of the witnesses by whom he proposes to establish alibi....
>
> ....
>
> (3) If a defendant or prosecuting attorney fails to comply with the requirements of this section, the court may exclude evidence offered to establish or rebut alibi. However, the defendant may always testify on his own behalf concerning alibi.

Utah Code Ann. § 77–14–2(1), (3) (2008). The statute also grants the trial court discretion to waive the requirements of the statute when "good cause" is shown. *See id.* § 77–14–2(4). "The overriding consideration in evaluating any notice-of-alibi claim must be the avoidance of unfair surprise or prejudice to either party, not an exaltation of technical formalities." *State v. Ortiz,* 712 P.2d 218, 220 (Utah 1985).

¶ 20 When we interpret a statute, "we first examine the statute's plain language and resort to other methods of statutory interpretation only if the language is ambiguous." *State v. Masciantonio,* 850 P.2d 492, 493 (Utah Ct.App.1993). When we read the plain language, we do so "as a whole and interpret its provisions in harmony with other provisions in the same statute and with other statutes under the same and related chapters." *O'Dea v. Olea,* 2009 UT 46, ¶ 32, 217 P.3d 704 (internal quotation marks omitted).

¶ 21 Here, after the penalty for failing to comply with the notice requirement is established, the statute states, "However, the defendant may always testify on his own behalf concerning alibi." Utah Code Ann. § 77–14–2(3). The trial court interpreted this statement as subject to the notice requirement established in 77–14–2(1). We disagree with the trial court's interpretation.

¶ 22 The plain language of section 77–14–2 protects a defendant's ability to "testify on

State argues that because Gallup failed to properly invoke his Fifth Amendment rights, he cannot now claim that those rights were violated at trial. In the *Miranda* context, this court previously determined that "*Miranda*'s allowance of an invocation of the right to remain silent 'in any manner' arguably encompasses both equivocal and unequivocal requests." *State v. Gutierrez,* 864 P.2d 894, 899–900, 901 (Utah Ct.App.1993) (noting that law enforcement officers should attempt to clarify whether a defendant's equivocal remarks were intended to invoke the right to remain silent) (quoting *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). However, the State relies on *Berghuis v. Thompkins,* —— U.S. ——, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010), for the proposition that the right to remain silent must be unequivocally invoked in all situations, i.e. pre- and post-*Miranda*. *Cf. id.* at 2259–60 (determining, in a post-*Miranda* interrogation, that the defendant's argument that he successfully "invoke[d] his privilege to remain silent by not saying anything for a sufficient period of time" was "unpersua-

sive," and noting that "[t]here is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously" (internal quotation marks omitted)). Utah courts have yet to address the import of *Berghuis,* and we decline to use this case as an opportunity to do so. Until the *Berghuis* issue is ripe for consideration in Utah, we see no reason to diverge from our current case law and impose contrary or differing rules in determining whether a defendant has invoked the same Fifth Amendment rights pre-*Miranda* and pre-arrest. *Cf. State v. Palmer,* 860 P.2d 339, 341, 349–50 (Utah Ct.App.1993) (determining that a defendant's statement to a detective indicating that he would like to talk with an attorney was sufficient to invoke his Fifth Amendment rights in a pre-arrest, pre-*Miranda* scenario).

5. Gallup also contends that exclusion of his alibi testimony violated his due process rights. However, because of the manner in which we resolve the alibi issue, we do not address this argument.

his own behalf concerning alibi," *id.*, regardless of whether he complied with the statute's notice requirement. The statute's use of the word "however" is significant. "However" is a transition word that "indicates a limitation on the preceding rule," *Smith v. Davis Surgical Ctr., LLC*, 472 F.Supp.2d 1316, 1318 (D.Utah 2006), here, that the rule does not apply to a defendant's right to testify on his own behalf. *Cf. Federated Am. Ins. Co. v. Erickson*, 67 Wash.App. 670, 838 P.2d 693, 694 (1992) (noting that the placement of the word "however" in a disputed contract indicated an "additional limitation"). The use of the term "however" indicates that the defendant's right to testify on his own behalf concerning alibi is excepted from the preceding notice and penalty provisions in the statute. Thus, failure to comply with section 77–14–2's notice requirement grants the trial court discretion to exclude only alibi evidence extrinsic to the defendant's own testimony regarding alibi. *See* Utah Code Ann. § 77–14–2(3).[6] A defendant who did not give the prosecution proper notice of alibi evidence may still testify as to that alibi but cannot support his testimony with that of other witnesses or evidence. The prosecution is then free to argue any reasonable inferences the lack of supporting alibi evidence may warrant.

¶ 23 This interpretation is in accordance with the primary purposes of section 77–14–2 to "avoid[ ] . . . unfair surprise or prejudice," *see Ortiz*, 712 P.2d at 220, and "to erect safeguards against the wrongful use of the defense of alibi and give the prosecution time and information to investigate the merits of such defense," *State v. Whitely*, 100 Utah 14,

110 P.2d 337, 339 (1941) (internal quotation marks omitted). Both parties are disadvantaged by a defendant's failure to comply with the notice requirements of the statute. The defendant cannot support his alibi testimony with extrinsic evidence, and the prosecution likewise will not be in a position to rebut such testimony with extrinsic evidence. The prosecution is, however, in a position to argue the inferences arising from the defendant's failure to give notice and give the prosecution an opportunity to respond. In other words, the import of a defendant's alibi testimony absent supporting extrinsic evidence boils down to a matter of credibility and the weight of the other evidence presented at trial. Additionally, under the facts and circumstances of this case, Gallup's desire to testify as to alibi should not have come as a surprise to the State when, to use the State's own words, "the identity of the driver [of the speeding BMW] was the only real issue at trial."

### III. Prejudicial Error

¶ 24 Having determined that various errors were committed at trial, we must analyze whether those errors, either individually or cumulatively, warrant reversal by "undermin[ing] our confidence in the verdict," *see State v. Palmer*, 860 P.2d 339, 350 (Utah Ct.App.1993). "Where the error results in the deprivation of a constitutional right, we apply a higher standard of scrutiny, reversing the conviction unless we find the error harmless beyond a reasonable doubt." *State v. Calliham*, 2002 UT 86, ¶ 45, 55 P.3d 573. "In evaluating whether a[ constitution-

---

6. Several other jurisdictions have rules containing language similar to that in section 77–14–2. *See, e.g.,* Fed.R.Crim.P. 12.1(e) ("If a party fails to comply with this rule, the court may exclude the testimony of any undisclosed witness regarding the defendant's alibi. This rule does not limit the defendant's right to testify."); Mass. R.Crim. P. 14(b)(1)(D) ("Upon the failure of either party to comply with the requirements of this rule, the judge may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at the scene of the alleged offense. This rule shall not limit the right of the defendant to testify."); N.H. Super. Ct. R. 100 (providing that the notice requirements established by the rule "shall not limit the right of the defendant to testify in his

own behalf concerning the alibi notwithstanding he has not filed notice"). New York has gone a step further and interpreted its alibi notice statute as limiting the "preclusive provisions contained [in the alibi notice statute] . . . to witnesses who a defendant seeks to call to establish an alibi" despite the statute's lack of any reference, "explicitly or by implication, to a defendant" and his right to testify. *People v. Peace*, 256 A.D.2d 1014, 683 N.Y.S.2d 317, 318 (N.Y.App.Div.1998) ("Quite clearly, the preclusive provisions of [the alibi notice statute] do not apply to the testimony of a defendant inasmuch as he or she has the absolute right, both statutorily and constitutionally, to testify on his or her own behalf.").

al] error was harmless beyond a reasonable doubt, we focus on whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *State v. Morrison*, 937 P.2d 1293, 1296 (Utah Ct.App.1997) (internal quotation marks omitted).

¶ 25 We believe the trial court's errors each individually warrant reversal. This was a case based on credibility in which the jury had to determine whether the trooper's testimony was credible enough to warrant conviction. The silence evidence impermissibly bolstered the State's case by directly putting Gallup's credibility into question before he had even opened the door to such an attack. Without the inference of guilt the State drew from Gallup's hanging up the phone and its repeated references to his having done so throughout the trial, the State's case consisted entirely of the trooper's testimony that the BMW was registered to Gallup and that the brief glimpse he caught of the profile of the silhouetted driver through the rear tinted window was consistent with the driver license picture of Gallup that the Trooper later acquired. The trooper only had a few seconds to see the driver from his obstructed vantage point before the vehicle sped away, and he testified that his description of the driver as a brown-haired, thirty-something, 190-to-200 pound male "would fit quite a few people in the population." Likewise, Gallup's testimony indicated that some of the trooper's observations were incorrect—that his BMW was grey, not blue, and that Gallup weighed approximately 220 pounds at the time of the incident. In other words, without the telephone call evidence, this was a close case and it is not clear for which side the fact-finder would have resolved the conflicts in the evidence. However, the telephone call evidence and the State's arguments that an innocent person would not have behaved as Gallup did on the telephone tipped the weight of the evidence in favor of the State. Thus, we believe admission of the evidence of silence was not

"harmless beyond a reasonable doubt," *Calliham*, 2002 UT 86, ¶ 45, 55 P.3d 573, because the evidence of silence "contributed to the conviction," *Morrison*, 937 P.2d at 1296.

¶ 26 Likewise, the trial court's error in prohibiting Gallup from testifying as to alibi was sufficiently prejudicial to warrant reversal. The only real issue in the case was the identity of the BMW driver that night. Initially, Gallup's trial strategy appeared to rely on the State's lack of solid evidence placing him in the BMW that night, but once the silence evidence was admitted, Gallup had to change courses and his alibi became of utmost importance.[7] However, Gallup's testimony was so limited by the trial court's incorrect ruling that it left the jury confused; the question the jury passed to the court during deliberations asking why Gallup was not asked any questions that would elucidate an alibi is a clear indication of that. Consequently, our confidence that Gallup had a fair trial has been undermined by this error as well.

### CONCLUSION

¶ 27 We reverse and remand for a new trial based on the trial court's error in admitting evidence of Gallup's silence, the State's improper use of that evidence throughout its case-in-chief, and the trial court's incorrect interpretation of Utah Code section 77–14–2.

¶ 28 I CONCUR: GREGORY K. ORME, Judge.

VOROS, Judge (concurring in result):

¶ 29 I concur in the result. While I agree that reversal is required, I differ with the majority on several key points.

1.  Telephone Call

¶ 30 The majority correctly applies *State v. Palmer*, 860 P.2d 339 (Utah Ct.App.1993), on the question of whether Gallup's Fifth Amendment right against self-incrimination

---

7. When addressing the alibi issue, Gallup's trial counsel was unsure of the scope of Gallup's proffered testimony. Although there may be competing inferences to be drawn from this lack of knowledge, *see infra* ¶ 36, it is consistent with

Gallup's trial counsel's representation that he did not intend for Gallup to testify and therefore was simply not prepared to describe the details of the testimony.

was violated when the prosecution was permitted to introduce his pre-arrest silence in its case-in-chief. However, as the majority notes, *see supra* ¶ 15 note 3, the use of pre-arrest silence in the government's case-in-chief is controversial. Although the State's brief could be read as questioning the holding of *Palmer*, "[f]or the purposes of this case only, the State does not challenge this Court's view in *Palmer*, that police questioning before arrest and before *Miranda* warnings should be given necessarily involves official compulsion."

¶ 31 The State makes a different argument. It contends that Gallup's silence could properly be used in the State's case-in-chief because Gallup never invoked his right to remain silent. Relying primarily on *Miranda* cases, in particular *Berghuis v. Thompkins*, ⸺ U.S. ⸺, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010), the State maintains that Gallup was required to "expressly and unambiguously state that he did not want to speak to the trooper." The majority rejects this argument on the ground that, in the *Miranda* context, even an equivocal invocation of the right to silence is sufficient. *See supra* ¶ 18 note 4. I too would reject the State's argument, but on different grounds.

¶ 32 *Berghuis* addresses what a custodial suspect must do to end an interrogation. The United States Supreme Court held that a custodial suspect "who wants to invoke his or her right to remain silent [must] do so unambiguously." *Id.* at 2260. The Court applied the phrase "invoke his or her right to remain silent" in the context of the rule that a suspect, by invoking his or her right to remain silent, may end the interrogation. It thus refused to treat "an ambiguous or equiv-

ocal act, omission, or statement" either as "an invocation of *Miranda* rights" or as requiring "police to end the interrogation." *Id.* In keeping with this holding, the Court stated that, had the suspect in that case said he wanted to remain silent or not talk with police, "he would have invoked his ' "right to cut off questioning." ' " *Id.* (quoting *Michigan v. Mosley*, 423 U.S. 96, 103, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (quoting *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966))). The *Berghuis* Court also stated that, if the suspect wanted to remain silent, "he could have said nothing in response to [the officer's] questions, or he could have unambiguously invoked his *Miranda* rights *and ended the interrogation.*" *Id.* at 2263 (emphasis added). Because of *Berghuis*'s emphasis on ending the interrogation, and because it is difficult to see how remaining silent is not an exercise of one's right to remain silent, I read *Berghuis* as holding that a suspect must unequivocally invoke his right to remain silent only to end a custodial interrogation.[1]

¶ 33 Consequently, I do not agree that *Berghuis* or any other judicial opinion addressing a suspect's *Miranda* rights applies here.[2] *Miranda* protections are required " 'only where there has been such a restriction on a person's freedom as to render him "in custody." ' " *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam)). Gallup was not in custody here. Thus, *Miranda* did not apply to him, and *Berghuis* does not control this issue.[3] Ac-

1. *Berghuis v. Thompkins*, ⸺ U.S. ⸺, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010), does not address the distinction between pre-waiver and post-waiver invocations. Many jurisdictions, including Utah, have treated these two types of invocations differently. *See, e.g., State v. Leyva*, 951 P.2d 738, 743 (Utah 1997) ("The questions of [the initial] waiver of *Miranda* rights and of post-waiver invocation of those rights are entirely separate."). The dissenting opinion in *Berghuis* seems to read the majority opinion as requiring an unequivocal invocation in pre-waiver as well as post-waiver contexts. *See Berghuis*, 130 S.Ct. at 2275 (Sotomayor, J., dissenting). However, whether *Berghuis* applies to both subcategories

of custodial interrogations is immaterial here, where no custodial interrogation occurred.

2. Even if *Berghuis* did apply, I see nothing equivocal in Gallup's exercise of his right to remain silent and to end the conversation. Hanging up on Trooper Clanton asserted these rights more definitively than any form of words.

3. The State also cites *Owens v. State*, 937 N.E.2d 880 (Ind.Ct.App.2010), for the proposition that invocation of the right to silence requires an unequivocal statement by the accused even in a non-custodial setting. Even if *Owens* were controlling, the court there emphasized that its hold-

cordingly, I would reject the State's argument that Gallup was required to unambiguously invoke his Fifth Amendment right to remain silent.

### 2. Alibi Testimony

¶ 34 I agree with the majority that the trial court misinterpreted the alibi statute. *See* Utah Code Ann. § 77–14–2 (2008). However, the State also argues that the trial court's interpretation of the statute was harmless. I agree that it was.

¶ 35 "[W]e will not set aside a verdict because of the erroneous exclusion of evidence unless a proffer of evidence appears of record, and we believe that the excluded evidence would probably have had a substantial influence in bringing about a different verdict." *State v. Rammel,* 721 P.2d 498, 499–500 (Utah 1986); *see also* Utah R. Evid. 103(a)(2) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and . . . if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.").

¶ 36 The trial court ruled that Gallup could testify that "he doesn't have a memory or he doesn't know where he was that night," but that he could not testify that "I was at a specific place that night." In something akin to a pre-trial proffer, Gallup's counsel told the court, "I believe that his testimony is going to be that he is going to not recall exactly where he was on that night." And at trial, Gallup testified only that he did not recall being in Utah County that night. Nothing in the record indicates that, but for the court's ruling, Gallup could or would have testified that he was at a specific place. Accordingly, while the trial court committed error, I see no basis in the record to determine whether the error affected the outcome of the trial.

### 3. Prejudice

¶ 37 The Supreme Court held in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. 824 (holding that the state had not demonstrated, beyond a reasonable doubt, that the use of the defendant's silence against him did not contribute to his conviction); *accord State v. Calliham,* 2002 UT 86, ¶ 45, 55 P.3d 573 ("Where the error results in the deprivation of a constitutional right, we apply a higher standard of scrutiny, reversing the conviction unless we find the error harmless beyond a reasonable doubt." (citing *Chapman,* 386 U.S. at 24, 87 S.Ct. 824)). Moreover, on appeal, "the State bears the burden of proving that an error passes muster under this standard." *Brecht v. Abrahamson,* 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *accord State v. Morrison,* 937 P.2d 1293, 1296 (Utah Ct.App. 1997) (citing *Brecht,* 507 U.S. at 630, 113 S.Ct. 1710).

¶ 38 The State argues that, even without evidence of Gallup's silence, the remaining evidence leaves no reasonable doubt of his guilt and thus admission of the evidence of silence was harmless beyond a reasonable doubt. Like the majority, and for reasons well stated in the majority opinion, I am not persuaded by this argument.

¶ 39 But the State also makes an alternative argument. Citing *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the State argues that, once Gallup testified, the prosecutor was free to cross-examine him about his pre-arrest silence. Consequently, the State argues, any error in admitting that evidence in the State's case-in-chief was merely a matter of timing, and thus harmless beyond a reasonable doubt. I do not agree that this argument demonstrates that the constitutional error was harmless beyond a reasonable doubt. First,

---

ing was "strictly limited to the particular facts currently before us." *See id.* at 892. Because Owens never spoke to a police officer, the facts before that court are significantly different than the facts before us. Moreover, *Owens* suggests that when a person is "under no compulsion to respond and may not even have been aware of the reason for [the police] communication"—or for that matter may not have even received the communication—silence may be, for that reason, "inadmissible based upon relevancy or unfair prejudice." *See id.* at 892.

*Jenkins* does not address the situation where a defendant testifies in response to the prosecution's having introduced, in violation of his Fifth Amendment rights, evidence of his silence. *See id.* at 232–34, 100 S.Ct. 2124. An argument might be made that in such a circumstance the law requires a defendant to make a difficult tactical choice between testifying at trial and preserving his Fifth Amendment claim for appellate review. *See, e.g., United States v. Paladino,* 401 F.3d 471, 477 (7th Cir.2005); *State v. Villarreal,* 126 Ariz. 589, 617 P.2d 541, 542 (App.1980). But the State has not made that argument here. In addition, the *Palmer* court reversed a conviction in at least partial reliance on the prosecution's use of Palmer's pre-arrest silence in its case-in-chief, notwithstanding Palmer later testified at trial. *See State v. Palmer,* 860 P.2d 339, 350 (Utah Ct.App. 1993).

¶ 40 In sum, I would reverse and remand based solely on the admission of Gallup's pre-arrest silence in the prosecution's case-in-chief in violation of the Fifth Amendment as interpreted by *Palmer.* This error has not, in my view, been demonstrated to be harmless beyond a reasonable doubt.