[Cite as *State v. Goldberg*, 2014-Ohio-2453.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-A-0063** |
| PATRICIA A. GOLDBERG, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula Municipal Court, Case No. 13 CRB 00617.

Judgment: Affirmed.

*Lori B. Lamar*, Assistant Ashtabula City Solicitor, Ashtabula Municipal Court, 110 West 44th Street, Ashtabula, OH 44004 (For Plaintiff-Appellee).

*Gregory A. Price*, 137 South Main, Suite 300, Akron, OH 44308 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from the final judgment in a criminal proceeding before the Ashtabula Municipal Court. Following an abbreviated bench trial, appellant, Patricia A. Goldberg, was found guilty of criminal damaging, a second-degree misdemeanor under Ashtabula City Ordinance 541.03(A)(1). She contends that her conviction cannot stand because the city's evidence did not support a finding that she caused harm to the car of the complaining witness, Deborah Witek. For the following reasons, the conviction was not against the manifest weight of the evidence.

{¶2}   The charge against appellant was based upon an incident that took place in the parking lot of the city municipal building, where the Ashtabula Municipal Court is housed.  On the morning of March 12, 2013, Kimberly Rodriguez came to the municipal building to testify against her former boyfriend, Floyd Carroll, about an assault complaint she had brought.  At that time, Rodriguez was good friends with Deborah Witek; hence, the women planned to meet at the municipal court so that Witek could lend Rodriguez moral support during the proceeding.

{¶3}   Witek arrived at the municipal building first, driving a grey Ford Mustang. She parked in a row of parking spaces which was directly in front of one section of the building.  However, due to the layout of the building, the entrance for the municipal court was not directly in front of Witek's car; instead, the entrance was almost at a right angle to the direction her vehicle was pointing.  Thus, if, upon exiting her car, Witek walked in the direction it was pointing, it would be necessary for her to go across a small section of grass before reaching a sidewalk that leads to the entrance.  But, if Witek went in the opposite direction and turned left at the back end of her car, she could walk through the parking lot and enter the building without crossing any grass.

{¶4}   Without waiting for Rodriguez to arrive, Witek left her car and went into the municipal building.  Eventually, she was shown into a waiting room on the second floor of the building, near the courtroom.  The waiting room had a window from which Witek could look down upon the entire parking lot and see her vehicle.

{¶5}   Rodriguez pulled into the parking lot next, and parked in the space directly to the left of Witek's vehicle in the same row.  Almost immediately after Rodriguez had parked, a third vehicle pulled into the parking lot.  This vehicle was driven by appellant,

2

and Rodriguez's ex-boyfriend, Floyd Carroll, was a passenger. Appellant parked her vehicle directly behind Witek's car in the next row of parking spaces.

{¶6} After Rodriguez exited her vehicle and began to walk toward the entrance to the building, Carroll started to yell at her from appellant's vehicle, asking why she was still going to testify against him. Rodriguez continued to go into the building, where she told a court clerk that Carroll was harassing her in the parking lot. Rodriguez was also told to wait in the same waiting room as Witek.

{¶7} At some point, Witek started to stand by the waiting room window and look out at the parking lot. First, she saw Carroll exit appellant's vehicle by himself and walk through the parking lot directly to the entrance that Witek and Rodriguez had just used. In doing so, Carroll did not go near Witek's vehicle.

{¶8} As Carroll was walking toward the building, Witek saw appellant exit her vehicle and go into the area between the two rows of parking spaces. However, instead of walking through the parking lot directly toward the building entrance, she went directly toward Witek's Mustang. At that juncture, Witek said to Rodriguez that "something" was about to occur in the parking lot; as a result, Rodriguez got up from her chair and looked out the waiting room window with Witek.

{¶9} According to Witek and Rodriguez, appellant proceeded to walk between Witek's Mustang and Rodriguez's car. Although neither woman could see appellant's right hand while she was between the vehicles, they both subsequently testified that her right arm was twisted to the side and slightly behind her. They also testified that when appellant came around the corner of Witek's vehicle and stepped onto the grass beside the sidewalk, she had her keys in "her hand."

3

{¶10} Once appellant walked from the area and went into the municipal building, Witek used the camera on her cell phone to take a photograph of the parking lot. This picture essentially showed the relationship of the three vehicles in the parking lot, and was introduced into evidence at trial.

{¶11} After Rodriguez testified in the scheduled proceeding against Carroll, she and Witek returned to their vehicles in the parking lot. Since appellant was sitting in her vehicle at that time, Witek decided not to inspect at the side of her vehicle immediately. Rather, she and Rodriguez agreed to meet at a restaurant a few miles away. When she was finally able to inspect her car at that location, Witek concluded that appellant used her keys to make a scratch in the paint on the majority of the left side of her Mustang.

{¶12} The police investigation into the incident led to the filing of the complaint against appellant. In charging her with criminal damaging, the complaint asserted that she knowingly caused a substantial risk of physical harm to Deborah Witek's property without Witek's consent.

{¶13} During the ensuing bench trial, Witek testified that, by going between her vehicle and Rodriguez's vehicle, appellant took a longer route to the building entrance than she would have if she had taken a right and walked directly through the parking lot. Witek further testified that the route appellant chose caused her to unnecessarily cross over grass. Additionally, Witek stated that it would cost $973.62 to repair the scratch on her car, and that the scratch in question did not exist prior to the "parking lot" incident.

{¶14} In testifying on her own behalf, appellant admitted that, as part of her route to the building entrance, she walked beside the left side of Witek's vehicle, and that she was carrying her keys in her right hand while doing so. However, she denied that she

4

used the keys to scratch the vehicle. As for the reason why she chose to walk beside Witek's car instead of going straight across the parking lot, appellant testified that she was trying to avoid Carroll, with whom she had been bickering in her car. At the end of her direct examination, appellant stated that when she saw Carroll inside the building, he told her that she had been seen walking beside Witek's vehicle, and that Witek and Rodriguez were likely to cause "trouble" "because that's Deborah's car." During cross-examination, the prosecutor asked appellant why Carroll would be concerned about possible trouble if she had walked by the vehicle without touching it. In response, appellant testified that his concern was due to the fact that Rodriguez and Witek were always calling her phone and harassing her.

{¶15} Concluding that the evidence supported the inference that appellant had "keyed" Witek's Mustang, the trial court found her guilty of criminal damaging. Initially, the trial court placed appellant in jail without imposing sentence, based upon her refusal to be quiet after the verdict was announced. Following a three-day delay, the trial court convened a new hearing and went forward with sentencing. After imposing a ninety-day term on the sole charge, the court suspended eighty-seven days of the term and placed her on probation. As a condition of her release, the trial court ordered appellant to pay restitution in the amount of $973.62.

{¶16} In appealing her conviction, appellant asserts two assignments of error for review:

{¶17} "[1.] This matter must be reversed and dismissed as the City failed to establish that the Ashtabula Municipal Court had jurisdiction to hear this matter.

{¶18} "[2.] The trial court's decision to find Ms. Goldberg guilty of criminal

5

damaging is against the manifest weight of the evidence."

{¶19} Under her first assignment, appellant argues that her conviction is invalid because the prosecution failed to present any evidence showing that the alleged crime occurred within the trial court's territorial jurisdiction. She further asserts that a finding of proper jurisdiction could not have been based upon judicial notice because the trial court never made such a finding upon the record.

{¶20} Since municipal courts are statutory creations, the scope of their subject matter jurisdiction is governed solely by statute. *State v. Jones*, 11th Dist. Portage Nos. 2010-P-0051 and 2010-P-0055, 2011-Ohio-5109, ¶24. Regarding criminal matters, "[a] municipal court has jurisdiction over misdemeanor offenses committed within the limits of its territory. R.C. 1901.20(A)(1)." *State v. Rode*, 11th Dist. Portage No. 2010-P-0015, 2011-Ohio-2455, ¶17.

{¶21} R.C. 1901.02(A) states that municipal courts "have jurisdiction within the corporate limits of their respective municipal corporations * * *." In turn, R.C. 1901.01(A) expressly provides for a separate municipal court for the City of Ashtabula. Thus, since appellant's case was tried in the Ashtabula Municipal Court, the "territorial jurisdiction" requirement was met if the underlying crime was committed within the city's corporate limits.

{¶22} The testimony of Deborah Witek and Kimberly Rodriguez readily showed that the incident involving Witek's vehicle took place in the parking lot of the municipal building in which the trial court was housed. Furthermore, Rodriguez responded "yes" when she was asked, as a preliminary matter, whether she was at "this building in the City of Ashtabula" on the date of the incident. Accordingly, even though the prosecution

6

did not ask one precise question establishing the trial court's territorial jurisdiction over the case, the evidence was sufficient to prove that: (1) the lot in which Witek parked her vehicle was directly adjacent to the municipal building; and (2) the building was located within the city's corporate limits. Taken as a whole, the evidence demonstrated that the "keying" of Witek's vehicle occurred within the trial court's territorial jurisdiction.

**{¶23}** Given the state of the evidence, it was not necessary for the trial court to take judicial notice of its own physical location. Therefore, since the trial court did not exceed the scope of its subject matter jurisdiction in hearing this case, appellant's first assignment lacks merit.

**{¶24}** Under her second assignment, appellant asserts that the trial court's guilty verdict was against the manifest weight of the evidence because the prosecution could not prove that she made the scratch on Witek's car. In support, she notes that neither Witek nor Rodriguez could testify that they could see whether she was actually touching the side of the car while walking by.

**{¶25}** In discussing the nature of the evidence prior to rendering its final verdict, the trial court stated that the fact that appellant scratched the car with her keys could be inferred from the other evidence in the case. In other words, the court held that the prosecution had presented sufficient circumstantial evidence to demonstrate that appellant made the scratch.

**{¶26}** Regarding the distinction between direct and circumstantial evidence, the following quote from *State v. Cornett*, 3d Dist Seneca No. 13-09-13, 2009-Ohio-3531, ¶12-13, is instructive:

**{¶27}** "Direct evidence is 'evidence that is based on personal knowledge or

7

observation and that, if true, proves a fact without inference or presumption.'  Black's Law Dictionary (8 Ed. 2004) 596.  Circumstantial evidence is 'evidence based on inference and not on personal knowledge or observation.'  Id. at 595.  Furthermore, circumstantial evidence has been defined as 'the proof of certain facts and circumstances in a given case, from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind.'  *State v. Duganitz* 76 Ohio App.3d 363, 367, * * * citing Black's Law Dictionary (5 Ed. 1979) 221.  Ohio Jury Instructions [provide] the following definitions that are helpful in understanding the nature of circumstantial evidence:

**{¶28}** "'Direct evidence is the testimony given by a witness who has seen or heard the facts to which he testifies.  It includes exhibits admitted into evidence during the trial; Circumstantial evidence is the proof of facts or circumstances by direct evidence from which you may reasonably infer other related or connected facts which naturally and logically follow, according to the common experience of mankind; To infer, or to make an inference, is to reach a reasonable (conclusion) (deduction) of fact which you may, but are not required to, make from other facts which you find have been established by direct evidence.  (* * *)'  Ohio Jury Instructions (2008), Section CR 409.01(3), (4), (5).

**{¶29}** "While an inference may be made from direct evidence that has been proven beyond a reasonable doubt, it is not permissible to make an inference from circumstantial evidence, or inference upon inference.  See *State v. Cowans*, 87 Ohio St.3d 68, 78, * * * [(1999)]."

**{¶30}** In this case, the following facts were established through direct evidence:

8

(1) appellant drove Carroll to the municipal building on the day of his "assault" hearing, and was with him in her car both before and after his verbal altercation with Rodriguez; (2) since Witek took good care of her Mustang and washed it often, she knew that there was no scratch on the car's left side when she parked it next to the municipal building; (3) appellant admitted that when she exited her vehicle, she walked beside the left side of Witek's car while carrying her own car keys in her right hand; (4) in walking between Witek's car and Rodriguez's car, appellant did not take the most direct route to go into the building; and (5) when Witek and Rodriguez met afterwards at the local restaurant, they both saw a scratch which extend across the majority of the Mustang's left side.

{¶31} When these five facts are viewed as a whole, a reasonable person could readily infer that appellant caused the new scratch on Witek's Mustang by scraping her keys on the car's left side as she walked by.

{¶32} Additionally, appellant expressly testified that when she ultimately met up with Carroll inside the building, he stated to her that Witek and Rodriguez were likely to create more trouble for them "because that's Deborah's car." When asked why Carroll would make that statement if she had merely walked by Witek's car, appellant could not provide a logical explanation. From this, a reasonable person could infer that appellant and Carroll actually planned for appellant to "key" either Rodriguez's or Witek's vehicle while they were sitting in the parking lot.

{¶33} As a separate challenge to the manifest weight of the evidence, appellant argues that the existence of the scratch was not properly established. She asserts that no photograph of the scratch was submitted, and that Witek's testimony concerning the scratch was uncorroborated. However, the latter part of appellant's assertion is simply

9

not correct. During her direct testimony, Rodriguez also confirmed that she saw a new scratch on Witek's vehicle when they met at the local restaurant. Therefore, the lack of a photograph of the scratch only raised an issue as to the credibility of Rodriguez's and Witek's testimony. Considered as a whole, the record does not support the conclusion that the trial court abused its discretion in finding that their testimony was believable.

{¶34} A criminal conviction cannot be reversed on appeal as being against the manifest weight of the evidence unless the record shows that the trier of fact lost its way in considering the evidence and assessing witness credibility, thereby creating a clear miscarriage of justice. *State v. Cobb*, 11th Dist. Trumbull No. 2013-T-0020, 2013-Ohio-4630, ¶20, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Pursuant to the foregoing discussion, there was considerable circumstantial evidence in this case from which the trial court could reasonable find that appellant knowingly caused a substantial risk of harm to Witek's property. That is, the evidence supported the inference that she "keyed" Witek's Mustang, thereby scraping the paint on the car's left side. Thus, since the trial court did not lose its way in finding appellant guilty of criminal damaging, her conviction is not against the manifest weight of the evidence. Appellant's second assignment is also without merit.

{¶35} For the reasons set forth in this opinion, the judgment of the Ashtabula Municipal Court is affirmed.

CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.