[Cite as *State v. Smoot*, 2020-Ohio-838.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio/City of Northwood                    Court of Appeals No. WD-19-034

    Appellee                                                 Trial Court No. CRB 1801474

v.

Daniel L. Smoot                                          **DECISION AND JUDGMENT**

    Appellant                                                Decided:  March 6, 2020

* * * * *

Brian Ballenger, Prosecuting Attorney Northwood, for appellee.

Michael B. Kelley, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Daniel L. Smoot, appeals the June 20, 2019 judgment of the Perrysburg Municipal Court, convicting him of criminal damaging.  For the following reasons, we affirm the trial court judgment.

# I. Background

{¶ 2} Daniel Smoot was employed as a mechanic at Royal, Mooney & Moses ("Royal"). According to the state, Smoot resigned on July 31, 2018. Before leaving the premises, he poured used motor oil on the floor, threw paperwork around the office, and spray-painted "John sees everything, oops," "Heil John," and a swastika on a door.

{¶ 3} A criminal complaint was filed against Smoot in the Mayor's Court of Northwood, Ohio, for criminal damaging, a violation of Northwood Codified Ordinance 642.10, a second-degree misdemeanor. The Northwood Court issued a discretionary transfer of prosecution under R.C. 1905.032 to Perrysburg Municipal Court, and granted a motion to amend the charge to criminal damaging under R.C. 2906.06 [sic].

{¶ 4} The case was tried to a jury on March 27, 2019. Smoot waived his right to an attorney and represented himself at trial, with an attorney from the public defender's office serving on stand-by to assist him. The state called two witnesses: (1) Royalty's branch manager, J.R.; and (2) Ryan Grames, an officer with the Northwood police department.

{¶ 5} J.R. testified that Smoot was a mechanic. On July 31, 2018, W.A., a Royal employee, called J.R. and told him that Smoot was spray-painting "words and stuff" on the walls and cabinets "and just causing a lot of trouble." J.R. arrived at Royalty within 15 minutes of receiving that call, as Smoot was leaving. Smoot had written "Heil John" with a swastika on the inside part of a door to the foam storage area, and he wrote "John sees everything, oops," on the outside of the door. He had scattered documents around

2.

the office—documents that the company is required by the Department of Transportation to maintain—and he dumped used motor oil on the plant floor. J.R. contacted the Northwood police department.

{¶ 6} J.R. testified that Royal replaced the doors that had been spray-painted, it used Oil-Dri to clean up the shop floor, and it changed the locks on the doors because Smoot originally refused to return his keys. J.R. confirmed that Smoot had not been given permission to spray-paint the doors or dump oil on the floor. He conceded that W.A. did not see Smoot dump the oil.

{¶ 7} Officer Grames, the state's second witness, testified that he was dispatched in response to the call from Royal about an employee who needed to be removed from the premises because he was causing damage. Officer Grames spoke with J.R. He observed the spray-painting, the papers strewn across the floor, and the spilled motor oil.

{¶ 8} Royal gave Smoot's telephone number to Officer Grames, and Officer Grames called Smoot using that number. He asked for Smoot and the person who answered the phone identified himself as Smoot. Smoot admitted to Officer Grames that he had spray-painted the doors and told him to go ahead and file the charges. Officer Grames asked Smoot to come to the station to talk with him, but Smoot hung up the phone. Officer Grames filed a complaint against Smoot for criminal damaging.

{¶ 9} Smoot did not testify at trial, but he stated during opening statement and again during closing argument that he accidentally spilled motor oil and knocked over

3.

some papers.  He denied that he spray-painted the doors.  Smoot claimed that no actual damage had occurred.

{¶ 10} The jury found Smoot guilty of criminal damaging.  The verdict form incorrectly identified the criminal damaging statute as R.C. 2906.06—instead of R.C. 2909.06, and did not specify the degree of the crime.  The trial court entered a nunc pro tunc judgment, correcting the statute number and supplementing the judgment by specifying the degree of the offense.  The court sentenced Smoot to 90 days in jail, with 60 days suspended.  He was placed on probation for a period of 24 months and ordered to pay restitution of $336 to Royalty.

{¶ 11} Smoot appealed and assigns the following errors for our review:

I.  The trial court erred when it accepted the jury's guilty verdict which was clearly against the manifest weight of the evidence, and based upon insufficient evidence.

II.  The trial court committed plain error when it allowed the State to violate Appellant's fifth amendment right to remain silent under the U.S. Constitution, and Appellant's right to have the State prove its case beyond a reasonable doubt.

III.  The trial court committed plain error when it improperly amended the charges for which Appellant had been convicted.

4.

## II. Law and Analysis

{¶ 12} In his first assignment of error, Smoot challenges the sufficiency and weight of the evidence. In his second assignment of error, he argues that the state violated his Fifth-Amendment right to remain silent. And in his third assignment of error, he argues that the trial court improperly amended the charges against him. We consider each of these assignments in turn.

## {¶ 13} Sufficiency and Manifest Weight

{¶ 14} In his first assignment of error, Smoot challenges the weight and sufficiency of the evidence in support of his conviction. He claims that there was no testimony at trial by any eyewitness who observed him "cause the condition" at Royal. He maintains that J.R. was not an eyewitness, and the state failed to produce testimony from W.A. He insists that Officer Grames could point to nothing objective to identify that it was Smoot with whom he spoke on the phone, and Officer Grames's testimony was "double hearsay, rather than eye-witness testimony * * *."

{¶ 15} Smoot also claims that "there was absolutely no physical harm to property done at Royal." While he acknowledges that papers were strewn about the floor, oil was spilled, and cabinet doors were spray-painted, he argues that "nothing was broken such that it did not function, and everything could easily be cleaned up."

{¶ 16} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing

5.

the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 17} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 18} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and

6.

discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 19} To convict Smoot of criminal damaging, the state was required to prove that Smoot knowingly, by any means, caused or created a substantial risk of physical harm to Royal's property without its consent. R.C. 2909.06(A)(1) and (B) ("No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent * * * [k]nowingly, by any means[.]"). The state presented evidence of each of these elements.

{¶ 20} Royal's branch manager, J.R., testified that Royal did not provide consent for Smoot to dump oil on the floor, spray-paint derogatory remarks about him on the doors, or scatter important paperwork around the office. Officer Grames testified that Smoot admitted to him that he painted the doors. And J.R. testified that Royal replaced the doors because of the offensive messages that Smoot spray-painted on them.

{¶ 21} Smoot suggests that the state was required to provide eyewitness testimony to the crime. It was not. "Although physical evidence and eyewitness testimony is helpful to prove a case, it is not necessary." *State v. Martin*, 8th Dist. Cuyahoga No. 90722, 2008-Ohio-5263, ¶ 42. *See also State v. Robinson*, 10th Dist. Franklin No. 17AP-853, 2019-Ohio-558, ¶ 53 (acknowledging that eyewitness testimony is not needed to sustain a conviction). Here, Officer Grames testified that Smoot admitted to him that he spray-painted the doors at Royal. Smoot's statement to Officer Grames constituted an

7.

admission by a party-opponent and, by definition, was not hearsay.[1]  Evid.R. 801(D)(2).

Officer Grames's testimony, if believed, was sufficient evidence that Smoot committed

the conduct at issue here.

{¶ 22} Smoot also argues that his conduct could not be deemed "criminal

damaging" because "nothing was broken such that it did not function, and everything

could easily be cleaned up."  He cites no authority for this position.  While it is true that

the doors could be replaced or repainted and the oil could be cleaned up, the jury could

reasonably conclude that the property was nevertheless "damaged."  Our position is

consistent with Ohio case law.

{¶ 23} In *State v. Myles*, 2d Dist. Montgomery No. 25297, 2013-Ohio-2227, ¶ 16,

*State v. Goldberg*, 11th Dist. Ashtabula No. 2013-A-0063, 2014-Ohio-2453, ¶ 34, and

*In re J.R.W.*, 12th Dist. Warren No. CA2010-02-013, 2010-Ohio-2959, ¶ 2, for instance,

the damage at issue occurred when the appellants intentionally scratched the paint on the

victims' vehicles.  Although there is nothing in these cases to suggest that the paint

damage rendered the vehicles non-operational, the courts upheld the appellants' criminal-

damaging convictions.

---

[1] In any event, "when conducting a review of the sufficiency of the evidence, we must consider all the evidence admitted at trial, even improperly admitted evidence."  *State v. Stokes*, 2d Dist. Champaign No. 2015-CA-22, 2016-Ohio-612, fn. 3, citing *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284.

8.

{¶ 24} Consistent with these cases, we conclude that the spray paint caused damage to Royal's property, regardless of the fact that the doors were still functional. We find that the state presented sufficient evidence demonstrating damage to Royal's property.

{¶ 25} As to Smoot's challenge to the weight of the evidence, Smoot argues that Officer Grames "could point to nothing objective" to identify who he spoke with on the phone, such as the phone number he called. But Officer Grames testified that he had dealt with Smoot several times and the person on the phone sounded like him. Ultimately, it was for the jury to weigh the evidence. While on a challenge to the weight of the evidence we scrutinize the factfinder's resolution of conflicting evidence, we find here that the jury did not clearly lose its way in choosing to believe Officer Grames's testimony. We, therefore, conclude that there was sufficient evidence to support Smoot's conviction, and his conviction was not against the manifest weight of the evidence.

{¶ 26} We find Smoot's first assignment of error not well-taken.

**B. Right to Remain Silent**

{¶ 27} In his second assignment of error, Smoot argues that the trial court committed plain error by allowing the state to violate his Fifth-Amendment right to remain silent. He identifies two purported violations. The first occurred when Officer Grames testified that he asked Smoot to come to the station to talk to him, but Smoot hung up on him. The second occurred at closing, when the state commented that "[t]he Defendant put on no evidence to deny any of this. Nothing. Mr. Smoot * * * had an

9.

opportunity to put that on. He didn't do that. Why? Because he told the officer he did it."

{¶ 28} Smoot did not object at trial, so we are limited to a plain-error review. Plain error is error that affects substantial rights. Crim.R. 52(B). In determining whether plain error occurred, we must examine the alleged error in light of all of the evidence properly admitted at trial. *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001). Plain error should be found "only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *Id.*, citing *Long* at paragraph two of the syllabus.

{¶ 29} With respect to the state's statement at closing that Smoot put on no evidence denying the state's version of the events, "[i]t is well settled that the prosecution may comment upon the evidence and upon the failure of the defense to offer evidence in support of its case." *State v. Feerer*, 12th Dist. Warren No. CA2008-05-064, 2008-Ohio-6766, ¶ 41, citing *State v. Clemons*, 82 Ohio St.3d 438, 452, 696 N.E.2d 1009 (1998); *State v. Adkins*, 144 Ohio App.3d 633, 642, 761 N.E.2d 94 (12th Dist.2001). That is all the state did here. Accordingly, we find no error arising from the state's comment during closing argument.

{¶ 30} Turning to Officer Grames's testimony, the state elicited the following testimony from Officer Grames:

10.

Q: Out of this incident, did you have an opportunity to speak to Mr. Daniel Smoot?

A: On the telephone I did, yes.

Q: You spoke to him by phone?

A: Yes.

Q: Did you call him or did he call you?

A: I called him.

Q: Okay. And out of that conversation, did he admit that he had spray-painted the doors?

A: Yes.

* * *

Q: During your phone conversation with Mr. Smoot, after he admitted that he spray-painted the door, did he also advise you to go ahead and file the charges?

A: Yes.

Q: Those were his words?

A: Yes.

Q: Did you ask him to come to the station so you could speak with him further?

A: Yes.

Q: And what was his response to that?

A: He hung up the phone.

Q: I'm sorry?

A: Well, then he stated go ahead and file the charges, and then he hung up the phone.

{¶ 31} Smoot cross-examined Officer Grames and attempted to call into question whether it was actually Smoot with whom he had spoken on the phone:

Q: Is that normal police tactic, to call and investigate after a crime?

A: Yes.

Q: It is? Wouldn't you want some kind of like physical proof or recording or something of me interviewing you [sic]? * * *

* * *

Q: How could you verify that that was me on the phone?

A: I'm familiar with you. I've dealt with you several times. Over the phone, it sounded like you, which is why I asked you to come in and speak with me personally.

{¶ 32} The state maintains that (1) any statements about Smoot hanging up when asked to come to the station were made in the context of describing the course of the investigation; (2) the statement was elicited for no other purpose than to verify that it was Smoot who had spoken with Officer Grames on the phone; and (3) the statements and testimony—to which Smoot did not object—did not rise to the level of plain error.

12.

{¶ 33} Certainly, it may be error to admit evidence of a defendant's pre-arrest silence as evidence of guilt. *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, syllabus ("Use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination."). And depending on the circumstances, it may be error to admit evidence that a defendant hung up on an officer upon being telephoned and asked to come to the station. A case from Utah—*State v. Gallup*, 267 P.3d 289 (Utah 2011)—is illustrative of this point.

{¶ 34} In *Gallup*, a trooper initiated a stop of a blue BMW traveling 88 m.p.h. As the trooper approached the vehicle, it sped away. The trooper got a brief look at the driver through a tinted passenger window. Because he had already communicated the license plate number to dispatch, the trooper was able to view the license photo of the registered owner of the vehicle. From his brief observation of the driver, it appeared to the trooper to be the same person pictured in the photo.

{¶ 35} The trooper obtained the defendant's phone number and called him about an hour after the incident. A male voice answered, and the trooper asked, "'Is Mr. Jeffrey Gallup there?'" *Id.* at 292. The person responded, "'This is Jeffrey.'" *Id.* The trooper identified himself and said, "'I was wondering if you could tell me your location. I'd like to meet with you for just a few minutes and talk to you about an incident.'" *Id.* The trooper's request was met with silence; the defendant then hung up without saying anything further. The defendant was charged with speeding, driving with a suspended license, and failing to respond to an officer's signal to stop.

13.

{¶ 36} The defendant moved to exclude evidence that the defendant hung up on the trooper, arguing that it violated his right against self-incrimination because it insinuated his guilt. The court denied his motion, reasoning that hanging up on the trooper was akin to a party-admission, a hearsay exception.

{¶ 37} At trial, the state focused its direct examination of the trooper on the phone call and on the fact that the defendant hung up on the trooper:

[Trooper]: ... I explained who I was. "I'm Trooper Clanton with the Highway Patrol, and I was wondering if you could tell me your location. I'd like to meet with you for just a few minutes and talk to you about an incident," and there was—and then at that point there was a brief moment of silence, possibly a second or so, and then the conversation ended.

[Prosecutor]: Okay.

[Trooper]: The person on the other end of the phone hung up the phone.

[Prosecutor]: So he hung up on you?

[Trooper]: Correct.

[Prosecutor]: He didn't say, "Hey, I'm glad you called. I wanted to talk to you. Someone has my car," anything like that?

[Trooper]: No.

[Prosecutor]: Just hung up on you?

[Trooper]: Yes.

*Id.* at 292.  On cross-examination, the trooper acknowledged that a suspect is not under a legal obligation to converse and is "free to say whatever they want, or not to speak." *Id.* at 293.

{¶ 38} After the state rested, the defendant decided to testify in his defense.  He explained that he would not have testified if his motion to exclude evidence of the phone call had been granted.  His defense was that he had not been driving the BMW at the time of the incident.  On cross-examination, the state asked him who had been driving the car if it was not him.  The defendant responded that he did not know, and the state turned its questioning toward the phone call:

> [Prosecutor]:  At that point didn't it seem important to talk to the officer a little more about the incident and figure out what he was talking about?
>
> * * *
>
> [Gallup]:  At that time, no.
>
> [Prosecutor]:  Didn't seem important to ask the officer more about what he was calling you about?
>
> [Gallup]:  At that time, no, I did not know why he was calling me.
>
> [Prosecutor]:  Okay. Did you ask the officer, "Hey, why are you calling me?"
>
> [Gallup]:  I did not, and he did not relate that to me.

15.

[Prosecutor]: Okay, did he—why didn't you respond to him when he said, "This is Trooper Clanton. I've been on the freeway. I want to talk to you about some events that happened tonight[?"]

* * *

[Prosecutor]: Why did you hang up on him?

[Gallup]: I was under the impression he was calling on another matter.

[Prosecutor]: Okay, so did you then follow up with him about that matter and ask more questions, or did you just hang up on him?

* * *

[Gallup]: I hung up on Officer Clanton at that point.

*Id.*

{¶ 39} During closing arguments, the state emphasized the importance of the phone call and the defendant's failure at that time to talk to the officer about the incident and explain it away. It told the jury:

What happened was he hung up the phone. Is that reasonable to believe that he was just confused. That he was just exercising his right to remain silent. Is that what he said to you today? Did he say, "I decided to exercise my right to remain silent, and I hung up." That's not what he said. * * * Hanging up that phone, ladies and gentlemen, showed his consciousness of guilt.

*Id.*

{¶ 40} The defendant objected, but his objections were overruled. The jury found the defendant guilty and the defendant appealed, arguing, among other things, that the trial court erred when it admitted the telephone call evidence. More specifically, he argued that the admission of the telephone call evidence, and particularly the evidence that he hung-up on the trooper, violated his pre-arrest right to remain silent. The appellate court agreed.

{¶ 41} The appellate court concluded that the defendant hanging up on the trooper was an exercise of his right against self-incrimination. It emphasized that at trial, the state specifically argued that the defendant's silence—exercised in the form of his hanging up—demonstrated his guilt. Once this evidence was admitted, the defendant was forced to choose between permitting the jury to infer guilt from his silence or surrender his right not to testify. *Id.* at 296, citing *Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, at ¶ 31. The court explained that although the state could properly introduce the silence evidence to impeach the defendant once he took the witness stand, it violated the defendant's Fifth-Amendment right to use his silence as substantive evidence of guilt.

{¶ 42} The present case is distinguishable from *Gallup*, 267 P.3d 289. For one, Smoot did not remain silent—he admitted spray-painting the doors. He hung up only after making this admission. Additionally, the state did not argue that Smoot's decision

to hang up on Officer Grames was substantive evidence of his guilt or offer additional commentary about Smoot hanging up on Officer Grames.

{¶ 43} The Ohio Supreme Court has recognized that "[a] single comment by a police officer as to a suspect's silence without any suggestion that the jury infer guilt from the silence constitutes harmless error. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). We find here that the reference to Smoot hanging up on Officer Grames was an isolated comment with no suggestion to the jury that guilt be inferred. Under the circumstances of this case, any arguable error in Officer Grames testifying that Smoot hung up on him was harmless.

{¶ 44} We find Smoot's second assignment of error not well-taken.

### C. Amendment of Charges

{¶ 45} Smoot claims in his third assignment of error that although he was originally charged with criminal damaging under Northwood Codified Ordinance 642.10, the verdict form charged a violation of R.C. 2906.06, "criminal damage," without specifying the degree of the offense, and the trial court later amended "the charge" to R.C. 2909.06, "criminal damage," a second-degree misdemeanor. He argues that the amendment was improper because it changed the name and identity of the offense. He concedes that he did not object to this at trial, but he maintains that this constituted plain error.

{¶ 46} The state responds that Smoot was charged by complaint with criminal damaging under R.C. 2909.06, a second-degree misdemeanor, and the trial court merely

18.

corrected a clerical error when it amended the jury form. It also maintains that while the statute is worded "criminal damaging," the phrase "criminal damage" is substantially similar and does not refer to any another crime under the Revised Code. The state insists that the trial court did not impermissibly use the nunc pro tunc order to change the name and identity of the crime of which Smoot was convicted.

{¶ 47} Our review of the record reveals that there was a typographical error, identifying the offense as a violation of R.C. 2906.06. It appears that this error first occurred on November 14, 2018, when the state moved to amend the charge from a violation of the Northwood Code of Ordinances to a violation of the Revised Code. Significantly, there is no R.C. 2906.06 in the Revised Code, the complaint tracked the language of the appropriate statute, the trial judge verbally informed the jury that the statute at issue was R.C. 2909.06, the offense was consistently referred to as "criminal damaging," and there are repeated references in the pleadings that the offense charged was a second-degree misdemeanor—the lowest degree of the offense.

{¶ 48} Crim.R. 7(B) provides that "[e]rror in the numerical designation or omission of the numerical designation shall not be ground for dismissal of the indictment or information, or for reversal of a conviction, if the error or omission did not prejudicially mislead the defendant." Under Crim.R. 36, "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." And under R.C. 2945.75(A)(2), when the presence of one or more additional elements makes an offense

19.

one of a more serious degree and the guilty verdict does not state either the degree of the offense or that additional elements are present, that guilty verdict "constitutes a finding of guilty of the least degree of the offense charged."

{¶ 49} Here, Smoot was not prejudiced in preparing his defense because he was given adequate notice of what the state intended to prove at trial. *See State v. Brown*, 12th Dist. Preble No. CA2003-02-004, 2004-Ohio-424, ¶ 43 (finding that misnumbering of statute in indictment did not prejudice appellant in preparing her defense because she was given adequate notice of what state intended to prove at trial). The consequence of failing to state the degree of the offense in the verdict form was simply that the lowest form of the offense would apply (which was what Smoot was charged with anyway). R.C. 2945.75(A)(2). The error at issue was a simple error in the numerical designation of the offense. And the trial court properly entered a nunc pro tunc entry to correct the error and the omission. *State v. Martinez*, 6th Dist. Lucas No. L-95-009, 1995 WL 680005, *3 (Nov. 17, 1995) (affirming conviction where trial court amended verdict form to correct typographical error in subsection of statute).

{¶ 50} Accordingly, we find Smoot's third assignment of error not well-taken.

### III. Conclusion

{¶ 51} We find Smoot's three assignments of error not well-taken.

{¶ 52} As to his first assignment of error, his criminal-damaging conviction was supported by sufficient evidence and was not against the manifest weight of the evidence where the state offered testimony that (1) he admitted spray-painting offensive messages on the door, (2) the door needed to be replaced, and (3) Royal did not consent to Smoot spray-painting the door. No eyewitness testimony was required. The door need not have been rendered non-functional to constitute property damage.

{¶ 53} As to his second assignment of error, the state did not violate his Fifth-Amendment right to silence where it elicited testimony from the officer that Smoot hung up when asked to come to the station. It was an isolated comment, there was no implication that this was substantive evidence of guilt, and the state did not argue this point during its closing argument. It was also not improper for the state to comment during closing that Smoot presented no evidence in support of his case.

{¶ 54} And as to his third assignment of error, under Crim.R. 7(B) and Crim.R. 36, the error in the numerical designation of the offense and the failure of the verdict form to state the degree of the offense were properly corrected in a nunc pro tunc judgment entry.

{¶ 55} Accordingly, we affirm the June 20, 2019 judgment of the Perrysburg Municipal Court. Smoot is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

Christine E. Mayle, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.